BANKERS TRUST COMPANY OF CALIFORNIA, N.A.
*v.* HERMAN VANECK
(AC 26570)

Flynn, C. J., and Schaller and Peters, Js.

Argued March 20—officially released May 16, 2006

*Patrick W. Boatman*, for the appellant (defendant).

*Peter A. Ventre*, for the appellee (plaintiff).

*Opinion*

PETERS, J. General Statutes § 49-17 permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage even when the mortgage has not yet been assigned to him. *Fleet National Bank* v. *Nazareth*, 75 Conn. App. 791, 795, 818 A.2d 69 (2003). The statute codifies the common-law principle of long standing that "the mortgage follows the note," pursuant to which only the rightful owner of the note has the right to enforce the mortgage. *New Milford*

*Savings Bank* v. *Jajer*, 244 Conn. 251, 266, 708 A.2d 1378 (1998); Restatement (Third), Property, Mortgages § 5.4, p. 380 (1997). The mortgagor in this appeal nonetheless challenges the right of a mortgage note holder to initiate foreclosure proceedings under the circumstances of this case. We affirm the foreclosure judgment of the trial court in favor of the holder of the note.

The plaintiff, Bankers Trust Company of California, N.A., filed a complaint on March 11, 2002, in which it sought to foreclose a mortgage executed on August 1, 2001, with respect to property at 24 Ebony Lane in Essex that is owned by the defendant, Herman Vaneck. The complaint alleged that, because the defendant had failed to make payments required by the note, the plaintiff had elected to accelerate the balance due and to foreclose the mortgage. The defendant filed a motion to dismiss in which he challenged the plaintiff's standing, denied his default and filed eleven special defenses and a six count counterclaim alleging fraudulent conduct on the part of Express Capital Lending, the original mortgagee.

The trial court, *Aurigemma, J.*, granted the plaintiff's motion to strike all special defenses and counts of the counterclaim other than those alleging payment. Thereafter, the court, *Jones, J.*, denied the defendant's motion for dismissal, which was based on an allegation that the plaintiff lacked standing to bring the foreclosure action because it was not an assignee of the mortgage and note when it initiated the action. Subsequently, the trial court, *Hon. Daniel F. Spallone*, judge trial referee, adopted Judge Jones' decision as the law of the case, found the defendant in default and determined the amount of his indebtedness to be $274,676.53. Because the value of the property substantially exceeded the amount of the debt, the court ordered a foreclosure by sale and set a date for the sale.

In his appeal, the defendant has raised two major issues. He challenges (1) the plaintiff's standing to enforce the note and mortgage and (2) the calculation of his indebtedness. We are not persuaded by any of his claims of impropriety.

## I

## STANDING

The defendant argues on appeal, as he did at trial, that the plaintiff does not have standing to enforce his mortgage note. This litigation was commenced by abode service on March 20, 2002. This date was subsequent to the negotiation of the note to the plaintiff but prior to the assignment of the mortgage itself, which did not occur until March 14, 2003, and was not recorded in the Essex land records until March 19, 2003. On these facts, the defendant maintains that the trial court, *Jones, J.*, improperly decided that the plaintiff had standing. We agree with Judge Jones.

The trial court based its holding that the plaintiff had standing to enforce the defendant's mortgage note on three documents that, the court found, established that the plaintiff had become the holder of the note "on or about August 31, 2001, a date prior to the commencement of this action." The first document was a mortgage note executed by the defendant on March 1, 2001, payable to the order of Express Capital Lending and indorsed that same date "Pay To The Order Of IMPAC FUNDING CORPORATION, Without Recourse, Express Capital Lending." The second document was an indenture agreement, dated August 30, 2001, pursuant to which the note was further indorsed "PAY TO THE ORDER OF 'Bankers Trust Company of California, N.A. as indenture trustee under the indenture relating to IMH Assets Corp., Collateralized Assets-Backed Bonds, Series 2001-2,' WITHOUT RECOURSE, IMPAC FUNDING CORPORATION." The third document was a

redacted copy of the mortgage loan purchase schedule that included the defendant's note and mortgage.[1] The court expressly found that the defendant had "not presented admissible evidence contradicting any of the material submitted by the plaintiff on the issue of standing."

In his appeal, the defendant no longer challenges the legal principle that the holder of a note may commence a foreclosure action without having possession of the underlying mortgage. He argues instead that the trial court improperly found that (1) the plaintiff was the holder of the mortgage note prior to the commencement of this action and (2) the indenture agreement on which the plaintiff relied at trial was a true and accurate copy of an indenture agreement dated August 30, 2001. We are not persuaded.

Our standard of review for challenges to a trial court's finding of facts is well established. To prevail, the defendant must demonstrate that the court's findings were clearly erroneous. See Practice Book § 60-5; *Bank of America, FSB* v. *Franco*, 57 Conn. App. 688, 694, 751 A.2d 394 (2000); see also *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

At the hearing held by Judge Jones, the defendant argued that the plaintiff did not have the requisite factual predicate for standing to enforce the mortgage note because, in the defendant's view, (1) there was a fatal discrepancy in the identification of the party, variously described as Impac CMB Trust and Impac Funding Corporation, that negotiated the note to the plaintiff, (2) the indenture agreement through which the note was transferred to the plaintiff was invalid because it bore a notation that it was not created until March 10, 2003,

---

[1] These documents were introduced into evidence by Michael Vestal, a vice president of Countrywide Home Loans, who was the plaintiff's servicing agent.

(3) the person who notarized the signature of the plaintiff's representative on the indenture purported to act on a date prior to that stated on his notary license and (4) the plaintiff's status as a bona fide corporate entity was put into question by a search of the California corporate records and by testimony that the plaintiff was a trustee.

Each of these allegations was contested by the plaintiff. In particular, the plaintiff explained that it was unable to produce the original mortgage indenture because it had been destroyed in the terrorist attack on the World Trade Center on September 11, 2001. At trial, the plaintiff, therefore relied on a re-creation of the indenture. In the process of re-creating this document, it came to bear some of the notations that the defendant questioned. The trial court apparently accepted this explanation.

The defendant now renews these claims, but none of them is properly before us. Although they were raised at trial, they were not addressed in Judge Jones' memorandum of decision. The defendant did not file a motion for articulation asking Judge Jones to rule on them. Under these circumstances, the defendant has failed to provide the record that is a predicate for proper appellate review. See Practice Book §§ 60-5 and 61-10; *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52–53, 717 A.2d 77 (1998); *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 124–25, 891 A.2d 106 (2006). We therefore decline to review their merits.

## II

## PAYMENT

In addition to challenging the plaintiff's authority to enforce the mortgage debt, the defendant also raised a number of affirmative defenses and counterclaims to

his obligation on the note that he concededly had signed. The trial court, *Aurigemma, J.*, summarily rejected each of these defenses except for that of payment. After an evidentiary hearing, the trial court, *Hon. Daniel F. Spallone*, judge trial referee, found that the defendant was indebted to the plaintiff "in the amount of $274,676.53 as of March 22, 2005, with interest to run at $34.59 from said date until the property is redeemed or sold."

In arriving at its judgment, the trial court found, without elaboration, that "[t]he plaintiff is the owner of the mortgage note and deed in this case and has standing to bring this action. The defendant has failed to make his payments as promised in said note, which, according to its terms, has been accelerated, making the total balance of the note due and payable. The defendant is found to be in default under the note. The defendant has failed to prove his fourth special defense alleging payment; therefore, the court finds for the plaintiff on said special defenses."

A

The defendant first challenges the validity of the trial court's findings on an evidentiary ground. He maintains that the trial court improperly admitted into evidence as a notice of default a document other than the original notice allegedly sent to him. Concededly, our review of this evidentiary ruling is limited in scope. The defendant can prevail on this claim only if the trial court's decision was an abuse of its discretion. *Cadle Co.* v. *Errato*, 71 Conn. App. 447, 452–53, 802 A.2d 887, cert. denied, 262 Conn. 918, 812 A.2d 861 (2002).

To prove that the defendant had been notified of his default, the plaintiff presented the testimony of an employee of the company servicing the defendant's loan on behalf of the plaintiff. Pursuant to General Statutes § 52-180, the court permitted this witness to introduce,

as an exhibit, a reproduced, computer generated copy of the original notice of default sent to the defendant at his designated address.

The defendant maintains that this evidence was insufficient. In his view, the plaintiff was required to produce either a copy of the original default letter that was sent to him or some other evidence that the notice actually was sent to him.

Whatever the merits of this claim might be in the abstract, it cannot be sustained in this case because of the defendant's failure to respond to the plaintiff's request for admissions. In the second set of requests for admission, the defendant expressly was asked to admit that the attached computer generated exhibit was a true and accurate copy of the notice of default. He did not respond in timely fashion, which was deemed an admission. See Practice Book § 13-23; *Filipek* v. *Burns*, 76 Conn. App. 165, 168, 818 A.2d 866 (2003). After having been notified that the plaintiff intended to rely on that admission, the defendant moved to withdraw them but was denied permission to do so by the trial court, *Silbert, J.* The plaintiff informed Judge Spallone of the existence of the requests to admit and relied on them in its reply to the defendant's posttrial brief. On this state of the record, the plaintiff's evidentiary claim must fail.

B

Alternatively, the defendant maintains that he is entitled to a new hearing because the trial court miscalculated the amount of his debt on the promissory note. He recognizes that, to have us set this finding of fact aside, he must demonstrate that it was clearly erroneous. See Practice Book § 60-5; *Bank of America, FSB* v. *Franco*, supra, 57 Conn. App. 694; see also *Pandolphe's Auto Parts, Inc.* v. *Manchester*, supra, 181 Conn. 221–22.

The defendant disputes the amount of his debt in three respects. He maintains that the trial court improperly (1) calculated the interest rate that governed his variable interest rate note, (2) enforced a "fees due" charge in the payoff letter and (3) declined to adjust the balance in his escrow account to reflect a local property tax bill that he had paid personally. We are not persuaded.

### 1

The promissory note that the defendant signed was denominated an Adjustable Rate Note (LIBOR Rates— Rate Caps). The note specified: "Beginning with the first change Date, my interest rate will be based on an Index. The 'Index' is the average of interbank offered rates for six-month U.S. Dollar-denominated deposits in the London market ('LIBOR') as published in the Wall Street Journal."

At trial, the plaintiff presented interest rate calculations using the figures in the Wall Street Journal. The defendant argued, however, that the determinative rates were those in the London market as established by the British Bankers' Association without regard to their listing in the Wall Street Journal. The trial court agreed with the plaintiff's interpretation of the text of the note, and so do we. It was entirely appropriate for the court to give effect to all of the clauses in the interest rate provision. See *Bluebird Aviation Corp.* v. *Aviation Commission*, 42 Conn. App. 209, 216, 679 A.2d 957 (1996).

### 2

The defendant complains that, in the payoff letter that the plaintiff sent to him, he was assessed an amount described as "fees due" of $7741.37 without sufficient explanation of what this amount represented. A witness for the plaintiff testified that this fee represented $500

for monthly periodic property inspections to ensure that the property had not been damaged, $2000 for property appraisals and $5200 for attorney's fees and costs for the foreclosure action. The defendant maintains that he was entitled to further details about these sums.

At trial, the payoff letter that contained the assessment of "fees due" was admitted into evidence as a business record. Objecting to its admission, the defendant said only: "Same objection as before, Your Honor." The earlier objection did not, however, focus on an absence of underlying detail.

On this state of the record, the defendant cannot prevail. Although, in cross-examination at trial, he indicated that he would have liked more precise information, he did not renew his objection to the payoff statement on that ground.[2] He has not referred to any part of his trial brief in which he pursued this issue with the trial court. He did not ask the trial court to articulate the basis for its financial orders. We therefore lack the necessary predicate for appellate review of this issue.

3

Finally, the defendant alleges that, in calculating the balance in his escrow account, the plaintiff failed to give him credit for a returned tax check that the defendant received but failed to liquidate. This issue arose when the defendant personally made a tax payment that also was paid out of the escrow account. To rectify this situation, the town tax collector sent the plaintiff's agent a refund check that was then indorsed and sent to the defendant. The check was not cashed, not because of any action by the plaintiff but because, for

---

[2] The plaintiff filed supplemental affidavits of attorney's fees that the trial court accepted. The defendant has raised no issue with respect to these fees.

two years, the defendant failed to present it for payment. The defendant took the position that his escrow account should have been credited with the amount of the check because the plaintiff's agent would have been in a better position than the defendant to persuade the tax collector to issue a new check.

The trial court ruled that "the act of making this check stale resides with [the defendant] and it's up to him to clear it up." Although the defendant disagrees with this ruling, he has failed to identify any legal basis for overturning the court's decision. He does not challenge its factual finding about when a check becomes uncollectible by dint of the passage of time. He has not referred to anything in the agreement of the parties, or in governing legal principles, that would require the plaintiff to assume the burden of rectifying the present status of the stale tax refund check.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.