## CHASE HOME FINANCE, LLC *v.* GERMANIE FEQUIERE (AC 31301)

Gruendel, Beach and Borden, Js.

Argued December 3, 2009—officially released March 2, 2010

*Edward F. Kunin*, for the appellant (defendant).

*S. Bruce Fair*, for the appellee (substitute plaintiff U.S. Bank National Association, as trustee).

*Opinion*

BORDEN, J. The defendant, Germanie Fequiere, appeals from the judgment of strict foreclosure rendered by the trial court following the denial of her motion to dismiss, for lack of subject matter jurisdiction, this foreclosure action brought by the substitute plaintiff, U.S. Bank National Association, as trustee.[1]

---

[1] This action originally was filed under the name Chase Home Finance, LLC. The plaintiff subsequently filed a motion to substitute U.S. Bank National Association, as trustee, as the plaintiff and requested that "the [c]omplaint and [s]ummons be deemed to reflect the same in its entirety," which the court granted. See Practice Book § 9-20. Accordingly, all references to the plaintiff throughout this opinion are to U.S. Bank National Association, as trustee.

The defendant claims that the court improperly concluded that the plaintiff had standing to bring the foreclosure action. Specifically, the defendant claims that the court improperly concluded that (1) the plaintiff was a valid assignee of the mortgage securing the defendant's promissory note to BNC Mortgage, Inc., the plaintiff's predecessor in interest and (2) the Structured Asset Investment Loan Trust (SAIL), the entity for which the plaintiff is trustee, was a valid express trust as required by General Statutes § 52-106. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On August 25, 2005, the defendant executed and delivered a promissory note in the principal amount of $240,000 to BNC Mortgage, Inc. As security for the note, the defendant executed and delivered a mortgage on real property located at 208-210 Wheeler Avenue in Bridgeport to Mortgage Electronic Registration Systems, Inc. (MERS). The property was mortgaged to MERS, its successors and assigns "as nominee for [BNC Mortgage, Inc.] and [its] successors and assigns . . . ."[2] MERS

---

[2] As one court has explained, "MERS does not originate, lend, service, or invest in home mortgage loans. Instead, MERS acts as the nominal mortgagee for the loans owned by its members. The MERS system is designed to allow its members, which include originators, lenders, servicers, and investors, to assign home mortgage loans without having to record each transfer in the local land recording offices where the real estate securing the mortgage is located. . . .

"The benefit of naming MERS as the nominal mortgagee of record is that when the member transfers an interest in a mortgage loan to another MERS member, MERS privately tracks the assignment within its system but remains the mortgagee of record. According to MERS, this system saves lenders time and money, and reduces paperwork, by eliminating the need to prepare and record assignments when trading loans. . . .

"If, on the other hand, a MERS member transfers an interest in a mortgage loan to a non-MERS member, MERS no longer acts as the mortgagee of record and an assignment of the security instrument to the non-MERS member is drafted, executed, and typically recorded in the local land recording office." (Internal quotation marks omitted.) *Jackson* v. *Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487, 490–91 (Minn. 2009).

subsequently assigned the mortgage to the plaintiff by virtue of a recorded assignment of the mortgage. The promissory note was endorsed in blank by BNC Mortgage, Inc., and is in possession of the plaintiff.

On September 29, 2008, the plaintiff commenced this foreclosure action against the defendant. In its complaint, the plaintiff alleged, inter alia, that it was the holder of the note and mortgage, that the note was in default and that it was exercising its option to accelerate the balance due on the note. On February 17, 2009, the court entered a default for failure to appear against the defendant and rendered a judgment of strict foreclosure. The court set May 19, 2009, as the first law day.

On May 8, 2009, the defendant filed a motion to open the judgment of strict foreclosure. In support of her motion, the defendant claimed that she did not receive the summons and complaint[3] in connection with the plaintiff's foreclosure action and that "[t]here may be a defense to this action . . . ." On May 11, 2009, the court granted the defendant's motion to open the judgment of strict foreclosure to the extent of extending the first law day to July 28, 2009.[4]

On May 19, 2009, the defendant filed a motion to dismiss the underlying foreclosure action for lack of subject matter jurisdiction, accompanied by a memorandum of law in support of her motion. See Practice Book §§ 10-30 and 10-31. In her motion and supporting memorandum of law, the defendant claimed that the plaintiff did not have standing to commence its foreclosure action. Specifically, the defendant asserted that the plaintiff lacked standing to bring the action because

[3] At the hearing on the defendant's motion, she did not pursue this claim, and it is not involved in this appeal.

[4] Although in form the court granted the motion to open the judgment of strict foreclosure, it did so only to the extent of extending the law days. Therefore, in substance, the judgment of strict foreclosure is still in effect, with only new law days set by the court.

MERS, the original mortgagee as nominee for BNC Mortgage, Inc., did not have proper title to the mortgage and, therefore, its purported assignment of the mortgage to the plaintiff was ineffective. Additionally, the defendant claimed that the trust for which the plaintiff claimed to be trustee was not an enforceable "express trust" as required by § 52-106. The result of this alleged impropriety, according to the defendant, also deprived the plaintiff of standing to bring its foreclosure action. The defendant did not request an evidentiary hearing to support these claims. Instead, the court heard oral argument from the parties and received briefs, to which were attached copies of various documents, namely, excerpts of a prospectus detailing the SAIL trust agreement, the promissory note endorsed in blank by BNC Mortgage, Inc., the mortgage deed and the assignment of the mortgage from MERS to the plaintiff. The defendant has not supplied this court with a transcript of this oral argument, however.

On July 13, 2009, the court denied the defendant's motion to dismiss without a written opinion.[5] This appeal followed.

At the outset, we set forth the appropriate standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State v. Bonner*, 290 Conn. 468, 477–78, 964 A.2d 73 (2009).

---

[5] In a subsequent memorandum of decision, filed December 10, 2009, the court explained its ruling. As to the defendant's first claim, the court ruled that the plaintiff was entitled to foreclose on the mortgage because it was the holder of the note. As to the second claim, the court ruled that it was "without merit" because the sole authority on which the defendant relied was not applicable.

Our analysis of the defendant's claim is also governed by our well established principles of standing. "The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary. . . .

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Citations omitted; internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 213–14, 982 A.2d 1053 (2009). "Standing [however] is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) *Fleet National Bank* v. *Nazareth*, 75 Conn. App. 791, 793–94, 818 A.2d 69 (2003).

I

The defendant first claims that the plaintiff lacked standing to bring its foreclosure action because it was not a bona fide assignee of the mortgage. This claim is

based on the defendant's assertion that the designation of MERS as the mortgage "nominee" for BNC Mortgage, Inc., was insufficient to bestow proper title to the mortgage on MERS. As such, the defendant maintains that MERS did not have the authority to assign the subject mortgage to any entity other than its "nominator," BNC Mortgage, Inc. The defendant claims, therefore, that the assignment of the mortgage by MERS to the plaintiff was ineffective and that, consequentially, the plaintiff lacks standing to pursue foreclosure of the property. We disagree.

Even if we were to assume arguendo that the assignment of the mortgage from MERS to the plaintiff was invalid, the defendant's claim fails. "General Statutes § 49-17[6] permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage even when the mortgage has not yet been assigned to him. *Fleet National Bank* v. *Nazareth*, [supra, 75 Conn. App. 795]. The statute codifies the common-law principle of long standing that 'the mortgage follows the note,' pursuant to which only the rightful owner of the note has the right to enforce the mortgage. *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 266, 708 A.2d 1378 (1998); Restatement (Third), Property, Mortgages § 5.4, p. 380 (1997)." *Bankers Trust Co. of California, N.A.* v. *Vaneck*, 95 Conn. App. 390, 391–92, 899 A.2d 41, cert. denied, 279 Conn. 908, 901 A.2d 1225 (2006). Our legislature, by adopting § 49-17, has "provide[d] an avenue for the holder of the note to foreclose

---

[6] General Statutes § 49-17 provides: "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies."

on the property when the mortgage has not been assigned to him." *Fleet National Bank* v. *Nazareth,* supra, 795.

The defendant has failed to offer any evidence to counter the plaintiff's claim that it is a bona fide holder of the promissory note secured by the mortgage on the defendant's property. In contrast, the plaintiff offered a copy of the promissory note that was endorsed in blank by BNC Mortgage, Inc., by way of an allonge.[7] It is undisputed that the plaintiff is also in possession of the note.

The plaintiff's standing to enforce the promissory note is set forth by the provisions of the Uniform Commercial Code as adopted in General Statutes § 42a-1-101 et seq. Under these statutes, only a "holder" of an instrument or someone who has the rights of a holder is entitled to enforce the instrument. General Statutes § 42a-3-301. The "holder" is the person or entity in possession of the instrument if the instrument is payable to bearer. General Statutes § 42a-1-201 (b) (21) (A). When an instrument is endorsed in blank, it "becomes payable to bearer and may be negotiated by transfer of possession alone . . . ." General Statutes § 42a-3-205 (b).

As stated previously, the subject promissory note was endorsed in blank by BNC Mortgage, Inc., and, therefore, is payable to bearer. The plaintiff, by way of its possession of an instrument payable to bearer, is a valid holder of the instrument and, therefore, is entitled to enforce it. *Ninth RMA Partners, L.P.* v. *Krass,* 57 Conn. App. 1, 7, 746 A.2d 826, cert. denied, 253 Conn.

---

[7] An allonge is defined as "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary (9th Ed. 2009).

918, 755 A.2d 215 (2000). Furthermore, "[t]he possession by the bearer[8] of a note indorsed in blank imports prima facie that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note establishes his case prima facie against the makers and he may rest there. . . . It [is] for the [makers] to set up and prove the facts which limit or change the [bearer's] rights." (Internal quotation marks omitted.) *SKW Real Estate Ltd. Partnership* v. *Gallicchio*, 49 Conn. App. 563, 571, 716 A.2d 903, cert. denied, 247 Conn. 926, 719 A.2d 1169 (1998). The defendant has failed to present even a scintilla of evidence demonstrating that the plaintiff was not in possession of the promissory note or contradicting its status as a bona fide holder of the note.

II

We next address the defendant's claim that the plaintiff lacked standing because the SAIL trust, the entity for which the plaintiff is trustee, was not a valid and enforceable express trust. We disagree.

Section 52-106 provides that "[a]n executor, administrator, or trustee of an express trust may sue or be sued without joining the persons represented by him and beneficially interested in the action." The defendant maintains, in a conclusory fashion, that the SAIL trust is not an express trust within the purview of § 52-106 and that, therefore, the plaintiff does not have standing to bring its foreclosure action. In support of this proposition, the defendant cites *Second Exeter Corp.* v. *Epstein*, 5 Conn. App. 427, 499 A.2d 429 (1985), cert. denied, 198 Conn. 802, 502 A.2d 932 (1986). Her reliance is misplaced.

---

[8] A " 'bearer' " is the "person in possession of an instrument . . . payable to bearer or endorsed in blank." General Statutes § 42a-1-201 (b) (5).

*Second Exeter Corp.* concerned the right of a collection agent, acting only in its capacity as an authorized agent of a lender, to bring a claim against a debtor for moneys sought to be collected by the lender. Id., 427–28. In that case, the trial court concluded that the collection agent did not have standing to bring the action in its own name. Id., 427. On appeal, the collection agent asserted that it had standing because "it had a fiduciary duty to its principal analogous to the duty of a trustee to the beneficiary of a trust." Id., 429. Consequently, the agent claimed that "like a trustee, *whose duty provides him with standing to sue in his representative capacity,* the collection agent's accountability should clothe him with a similar standing and authority." (Emphasis added.) Id.

Affirming the judgment of the trial court, this court concluded that the agent did not have an interest in the litigation that was analogous to that of a trustee, as "[t]he trustee's standing to sue arises out of its legal title to the trust res." Id., 429–30. Moreover, this court emphasized that § 52-106 provides the trustee of an express trust with "the statutory right to sue" in its own capacity. Id., 430. *Second Exeter Corp.*, therefore, only relates to the defendant's appeal insofar as it reinforces the principle that the trustee of an express trust does have standing to commence a legal action, particularly against a debtor. Accordingly, we fail to see how *Second Exeter Corp.* supports the defendant's claim that the trust at issue was not a valid express trust and, therefore, that the plaintiff lacked standing to bring its foreclosure action.

Furthermore, the defendant has not offered any evidence or directed our attention to anything in the record that contradicts the plaintiff's assertion that the SAIL trust is a valid and enforceable express trust.[9] Although

---

[9] "The requisite elements of a valid and enforceable trust are: (1) a trustee, who holds the trust property and is subject to duties to deal with it for the benefit of one or more others; (2) one or more beneficiaries, to whom and

the defendant asserts in her brief that trusts such as the SAIL trust, which are comprised of real estate mortgage pools,[10] have no cognizable beneficiaries, she fails to cite to any authority or to provide reasoned legal analysis in support of this broad proposition. We are not required to consider issues that are not briefed beyond a bare assertion of a claim. See *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008) ("mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice"). Therefore, we do not address this claim further.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

---

for whose benefit the trustee owes the duties with respect to the trust property; and (3) trust property, which is held by the trustee for the beneficiaries." (Internal quotation marks omitted.) *Palozie* v. *Palozie*, 283 Conn. 538, 545, 927 A.2d 903 (2007).

[10] The plaintiff maintains that the body of the SAIL trust consists of a series of mortgage loans that were placed into asset pools and securitized. In their treatise on Connecticut foreclosures, Denis R. Caron and Geoffrey K. Milne state: "Typically, mortgage loans are placed into asset pools or 'securities' based upon various criteria. . . . The types of securities typically found are Real Estate Mortgage Investment Conduit . . . and 'pass through securities.' . . . Pass-through securities are typically created by a pool of mortgage loans . . . which are then sold to a trust. The holders of the securities receive the payments on the underlying mortgage loans, which payments include principal, interest, and prepayments." (Citation omitted.) D. Caron & G. Milne, Connecticut Foreclosures (4th Ed. 2004) § 26.01, p. 565; see also *Hunt* v. *Alliance North American Government Income Trust, Inc.*, 159 F.3d 723, 731 (2d Cir. 1998). The plaintiff claims that the holders of these securities are the beneficiaries of the trust. We need not reach this issue, however, because, as we explain in the text of this opinion, the defendant's argument to the contrary is inadequately briefed.