## RMS RESIDENTIAL PROPERTIES, LLC
### *v.* ANNA M. MILLER ET AL.
### (SC 18746)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Eveleigh, Js.*

---

* This case was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Norcott, Palmer, Zarella, McLachlan and Eveleigh. Although Justice Norcott was not present when the case was argued before the court, he read the record, briefs and transcript of oral argument prior to participating in this decision.

Argued September 19—officially released December 13, 2011

*Christopher G. Brown*, for the appellant (named defendant).

*Jeffrey M. Knickerbocker*, for the appellee (plaintiff).

*Robert M. Brochin*, pro hac vice, with whom, on the brief, was *Michael A. Leone*, for the appellee (intervening plaintiff).

EVELEIGH, J. The principal issue in this appeal is whether General Statutes § 49-17[1] confers standing on a holder of a promissory note to foreclose a mortgage. The named defendant, Anna M. Miller,[2] appeals[3] from the judgment of foreclosure by sale rendered by the trial court following the granting of a motion for summary judgment in favor of the plaintiff, RMS Residential Properties, LLC (RMS).[4] On appeal, the defendant contends that RMS lacked standing to commence the foreclosure action because it was not the owner of the promissory note at the time it commenced the foreclosure action and there is no statutory authority that confers standing on a mere holder of a note to foreclose a mortgage. Accordingly, the defendant further claims that the trial court improperly concluded that there was no genuine issue as to any material fact and that RMS was entitled to judgment of foreclosure by sale as a matter of law. The defendant next contends that (1) the mortgage was void, ab initio, and (2) that the court improperly relied upon a fatally infirm affidavit. In response, the plaintiffs,

[1] General Statutes § 49-17 provides: "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies."

[2] The defendants Citibank South Dakota, N.A., and the Internal Revenue Service, are not parties to this appeal. In the interest of simplicity, we refer to the named defendant, Anna M. Miller, also known as Anna K. Miller, as the defendant throughout this opinion.

[3] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] Both RMS and the intervening plaintiff, Mortgage Electronic Registration Systems, Inc. (MERS), are parties to this appeal. We refer to them individually by name when necessary, and collectively as the plaintiffs, for convenience.

RMS and the intervening plaintiff, Mortgage Electronic Registration Systems, Inc. (MERS), contend that because possession of a note raises a rebuttable presumption that a holder of a note is the owner of the debt, § 49-17 may confer standing to foreclose a mortgage on a holder of a note, and that the mortgage was not void, ab initio, nor the affidavit fatally infirm. We agree with the plaintiffs. Accordingly, we affirm the judgment of the trial court.

"Because this appeal arises from the granting of summary judgment in favor of the [plaintiff], our review proceeds from a view of the facts in the light most favorable to the [defendant]." *Gupta* v. *New Britain General Hospital*, 239 Conn. 574, 576, 687 A.2d 111 (1996). The record reveals the following facts and procedural history. The defendant executed a promissory note in the principal amount of $637,500 to Finance America, LLC. As security for the note, the defendant conveyed by way of mortgage deed her interest in real property located at 32 Overshore Drive in the town of Madison to MERS, as nominee for Finance America, LLC. The defendant failed to make even a single mortgage payment and, thus, the balance due on her promissory note was accelerated. The defendant's mortgage was thereafter assigned to RMS, and the assignment was recorded in the town of Madison land records. RMS became the holder of the note prior to the commencement of the present foreclosure action, which was commenced by service of the summons and complaint. Thereafter, the defendant filed an answer, special defenses and a counterclaim. RMS next filed the affidavit of Thomas Gilmore, vice president with Specialized Loan Servicing, LLC, attorney in fact of RMS, alleging that, "prior to the commencement of this action, [RMS], through its attorney . . . became the holder of the note."[5] The affidavit accompanied a motion for sum-

---

[5] The affidavit in the trial court record appears to be missing a page, on which the affiant swears that RMS is not only the holder, but the owner of

mary judgment seeking judgment as to the complaint and the defendant's counterclaim. The defendant filed a cross motion for summary judgment, arguing that the mortgage was void ab initio, and a motion to dismiss, claiming that even if the mortgage was not void, RMS lacked standing to institute the foreclosure action because (a) it was not the rightful owner of the note at the time the action was commenced, and (b) the Gilmore affidavit was fatally infirm. Subsequently, the trial court denied the motions for summary judgment filed by RMS and the defendant, as well as the defendant's motion to dismiss. Thereafter, RMS moved to reargue the denial of its motion for summary judgment. The trial court granted the motion to reargue, and after a hearing, granted RMS' motion for summary judgment and thereafter rendered judgment of foreclosure by sale. This appeal followed.

I

We begin with the defendant's claim that RMS lacked standing to commence this foreclosure action because it presents a question as to the trial court's subject matter jurisdiction. See, e.g., *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 511, 518, 970 A.2d 583 (2009). The defendant specifically argues that even if RMS' affidavit is admissible and the mortgage was not void ab initio, RMS did not have standing to bring this foreclosure action because it did not own the underlying debt when it commenced the action and no statutory authority confers standing to foreclose on a mere holder of the note. In response, the plaintiffs argue that a holder of the note is presumed to be the owner of the debt, and unless the defendant rebuts that presumption, a holder of the note is entitled to foreclose

the debt. We note that had this missing page been included in the affidavit, as apparently intended, the defendant's primary argument would be rendered moot.

the mortgage. We conclude that RMS had standing to commence this action.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Bysiewicz* v. *DiNardo*, 298 Conn. 748, 758, 6 A.3d 726 (2010). "Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved." (Internal quotation marks omitted.) *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 809, 12 A.3d 852 (2011). "Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Andross* v. *West Hartford*, 285 Conn. 309, 322, 939 A.2d 1146 (2008). "Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Monroe* v. *Horwitch*, 215 Conn. 469, 473, 576 A.2d 1280 (1990). "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Tabone*, 301 Conn. 708, 713–14, 23 A.3d 689 (2011).

Whether § 49-17 provides a holder of a note secured by a mortgage with standing to bring a foreclosure action is an issue of first impression for this court. The Appellate Court has, however, consistently answered this question in the affirmative. See, e.g., *HSBC Bank USA, N.A.* v. *Navin*, 129 Conn. App. 707, 22 A.3d 647 (2011). We agree. Section 49-17 permits the "person

entitled to receive the money secured" by a mortgage to foreclose on the mortgage, even when the mortgage has not yet been assigned to him. The defendant contends that only the owner of the debt, not a mere holder of the note, is entitled to foreclose on a mortgage. The plaintiffs agree, but further contend that a holder of the note is presumed to be the owner of the debt, and unless the defendant rebuts that presumption, a holder of the note is entitled to foreclose the mortgage. We agree with the plaintiffs.

Section 49-17 codifies the well established common-law principle that the mortgage follows the note, pursuant to which only the rightful owner of the note has the right to enforce the mortgage. See *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 266, 708 A.2d 1378 (1998); Restatement (Third), Property, Mortgages § 5.4, p. 380 (1997). Our legislature, by adopting § 49-17, created a statutory right for the rightful owner of a note to foreclose on real property regardless of whether the mortgage has been assigned to him. See, e.g., *HSBC Bank USA, N.A.* v. *Navin*, supra, 129 Conn. App. 711; *Chase Home Finance, LLC* v. *Fequiere*, 119 Conn. App. 570, 576–77, 989 A.2d 606, cert. denied, 295 Conn. 922, 991 A.2d 564 (2010); *Bankers Trust Co. of California, N.A.* v. *Vaneck*, 95 Conn. App. 390, 391, 899 A.2d 41, cert. denied, 279 Conn. 908, 901 A.2d 1225 (2006); *Fleet National Bank* v. *Nazareth*, 75 Conn. App. 791, 795, 818 A.2d 69 (2003).

Although the defendant challenges the existence of a mortgage on her property; see part II B of this opinion; she also challenges the application of § 49-17 to RMS, a mere holder of the promissory note. The defendant contends that RMS' affidavit amounts to an admission that it is not the rightful owner of the underlying debt and, as a matter of law, a mere holder of the note lacks standing to foreclose unless that holder is also the owner of the underlying debt. We disagree. RMS'

standing to enforce the promissory note is provided by the Uniform Commercial Code,[6] pursuant to which only a holder of an instrument, or someone who has the rights of a holder, is a " '[p]erson entitled to enforce' an instrument . . . ." General Statutes § 42a-3-301.[7] A holder is the entity, or person, in possession of the instrument if the instrument is payable to the bearer. General Statutes § 42a-1-201 (b) (21) (A). An instrument endorsed in blank "becomes payable to bearer and may be negotiated by transfer of possession alone . . . ." General Statutes § 42a-3-205 (b). In the present matter, Finance America, LLC, endorsed the promissory note in blank. Accordingly, "[RMS], by way of its possession of an instrument payable to [the] bearer, is a valid holder of the instrument and, therefore, is entitled to enforce it." *Chase Home Finance, LLC* v. *Fequiere*, supra, 119 Conn. App. 577.

The defendant contends, however, that the holder of the note's power to enforce is merely at law (i.e., the right to enforce personal liability), and that a note holder must demonstrate ownership of the underlying debt to exercise the equitable power of foreclosure. *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 759–60, 680 A.2d 301 (1996) (mere holder of promissory note, if not owner of underlying debt, cannot exercise equitable power of foreclosure). We agree. We also, however, agree with the plaintiffs' contention that a holder of a note is presumed to be the owner of the debt, and unless the presumption is rebut-

---

[6] The Uniform Commercial Code, as adopted by the Connecticut legislature, is codified at General Statutes § 42a-1-101 et seq.

[7] General Statutes § 42a-3-301 provides: " 'Person entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 42a-3-309 or 42a-3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."

ted, may foreclose the mortgage under § 49-17. "The possession by the bearer of a note indorsed in blank imports prima facie that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note establishes his case prima facie against the makers and he may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Citations omitted; internal quotation marks omitted.) *Garris* v. *Calechman*, 118 Conn. 112, 115, 170 A. 789 (1934). Accordingly, because the defendant offered no evidence to impeach the validity of RMS' evidence that it possessed the note at the time that it commenced the present action or to rebut the presumption that RMS owns the underlying debt, and as a matter of law the mortgage follows the note, we conclude that RMS was authorized by statute to commence this foreclosure action. Accordingly, the trial court properly denied the defendant's motion to dismiss for lack of standing to bring the foreclosure action.

II

Having determined that RMS had standing to bring the foreclosure action, we now address the defendant's secondary claims. The defendant contends that the court improperly rendered summary judgment in favor of RMS because (a) the power to foreclose a mortgage is in the rightful owner of the debt, not a mere holder of the note, and (b) in relying solely on business records, RMS' affidavit is inadmissible, and therefore there is no evidence that RMS was the holder of the note when it commenced the action. The defendant next contends that the trial court improperly granted RMS' motion for summary judgment on its foreclosure complaint and the defendant's counterclaim because the mortgage purports to convey legal title to MERS, an entity that did not make the underlying loan and never had any

interest in the underlying debt, rendering the mortgage void ab initio.

"The principles that govern our review of a trial court's ruling on a motion for summary judgment are well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . .

"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact . . . but rather to determine whether any such issues exist. . . . The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . Once the moving party has met its burden [of production] . . . the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . [I]t [is] incumbent [on] the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists. . . . The presence . . . of an alleged adverse claim is not sufficient to defeat a motion for summary judgment. . . .

"On appeal, the reviewing court must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find

support in the facts set out in the memorandum of decision of the trial court. . . . [R]eview of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Episcopal Church in the Diocese of Connecticut* v. *Gauss*, 302 Conn. 408, 421–22, 28 A.3d 302 (2011).

## A

For the reasons stated in our analysis of the trial court's subject matter jurisdiction, we conclude that, on the issue of RMS' power to foreclose given the evidence introduced that it was the holder of the note, the court properly found that there was no genuine issue of material fact and rendered summary judgment for RMS. "[T]he party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to . . . judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact . . . ." (Internal quotation marks omitted.) *Connecticut Podiatric Medical Assn.* v. *Health Net of Connecticut, Inc.*, 302 Conn. 464, 486, 28 A.3d 958 (2011). RMS offered a sworn affidavit stating that it was the holder of the promissory note at the time it commenced this foreclosure action. No evidence was offered by the defendant to counter that evidence or the presumption that arises from it. As previously stated, RMS need only prove that it was the holder of the note when it initiated the foreclosure action, and that the note was secured by a mortgage. *HSBC Bank USA, N.A.* v. *Navin*, supra, 129 Conn. App. 713. It is for the maker of the note to rebut the presumption that a holder of the note is also the owner of it. *Garris* v. *Calechman*, supra, 118 Conn. 115. Therefore, having failed to present any evidence rebutting the presumption that RMS was the rightful

owner of the debt at the time that it commenced the foreclosure action, the defendant has failed to satisfy her burden of providing any evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Accordingly, we conclude that the court properly granted RMS' motion for summary judgment and denied the defendant's cross motion.

The defendant next contends that RMS' affiant lacked personal knowledge of necessary facts, and therefore his reliance on a review of business records rendered the affidavit fatally infirm under Practice Book § 17-46.[8] If the defendant is correct, the trial court improperly rendered summary judgment in favor of RMS on its foreclosure complaint because there is no admissible evidence that RMS was holder of the note when it commenced the foreclosure action. The plaintiffs contend in response that the affiant properly relied on business records and that the affidavit is admissible. We agree with the plaintiffs.

The defendant provides no authority, and we know of none, that precludes affiants from obtaining personal knowledge of underlying transactions by review of business records. Under General Statutes § 52-180,[9] to be

[8] Practice Book § 17-46 provides in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ."

[9] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, or occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other

competent to testify, the affiant need only have personal knowledge of the relevant business records. See, e.g., *Zbras* v. *St. Vincent's Medical Center*, 91 Conn. App. 289, 294, 880 A.2d 999 (affidavit admissible despite affiant's reliance on business records rather than personal involvement with act, transaction or occurrence recounted therein), cert. denied, 276 Conn. 910, 886 A.2d 424 (2005). We find the defendant's reliance on *Gupta* v. *New Britain General Hospital*, supra, 239 Conn. 574, to be misplaced.[10] Accordingly, we conclude that the trial court properly found that the affidavit supplied an evidentiary basis for summary judgment in favor of the plaintiffs.

## B

Second, the defendant contends that the mortgage was void, ab initio, because it was not granted to the owner of the debt. The defendant posits that, if the mortgage was void ab initio, the debt was not secured by any real property and therefore no party may foreclose on the defendant's property regardless of her default on the promissory note. Accordingly, the defendant claims that the mortgage should be discharged and title quieted in her name. The plaintiffs contend, in response, that a lender may designate a third party

circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

[10] In *Gupta*, the plaintiff testified by affidavit that the defendant hospital's decision to terminate his participation in its residency program resulted from conduct of the hospital that was arbitrary, capricious and in bad faith. *Gupta* v. *New Britain General Hospital*, supra, 239 Conn. 594. The plaintiff claimed that in light of his performance records, a reasonable fact finder could have inferred that the defendant dismissed him due to improper motivations. Id., 596–97. We declined "to construct such inferential bridges or to substitute the plaintiff's appraisal of his performance for that of the hospital," concluding that a difference in judgment with regard to the plaintiff's performance was not evidence of any material fact. Id., 597. In the present matter, the affidavit does not suggest inferences, but provides evidence of facts that give rise to a legal presumption.

to serve as mortgagee from the very inception of the mortgage. We agree with the plaintiffs.

"The general rule of law in this jurisdiction, having in mind the purpose and effect of our recording system, undoubtedly is . . . that valid and enforceable mortgages, so far as the rights of subsequent claimants are concerned, must show by their record with reasonable certainty the real nature of the transaction involved so far as it can be disclosed, so that such claimants may be able to determine the real facts or may be so informed that they can by common prudence and by the exercise of ordinary diligence, ascertain the extent of the incumbrance." *First National Bank of Bridgeport* v. *National Grain Corp.*, 103 Conn. 657, 662–63, 131 A. 404 (1925). "In the absence of fraud, a mortgage may be held for the security of the real creditor, whether he is the party named as [the] mortgagee or some other party, for the provisions of a mortgage are not necessarily personal to the mortgagee named. The real party in interest may be an assignee of the mortgagee or [someone] subrogated to his rights under the mortgage, or even a third person not answering either of these descriptions. . . . So, it has been held that where a mortgage is given to the cashier of a bank in his individual name, for the purpose of securing a debt due from the mortgagor to the bank, the mortgage is a good and valid security in the favor of the bank . . . and a mortgage given to the administrator of an estate enures to the estate of which he is the representative." (Citations omitted.) Id., 663–64.

The defendant contends that MERS, because it was not the original lender, was not the party secured by the mortgage, and accordingly could not validly be named mortgagee. The mortgage, however, plainly discloses that MERS was named mortgagee as nominee for the original lender, Finance America, LLC. Accordingly, the real nature of the transaction was properly and suffi-

ciently disclosed. The defendant does not contest that the original lender could create the mortgage interest to secure the debt, and then assign it to MERS. Accordingly, the defendant's contention is that the lender may not accomplish in one recorded transaction that which it could undisputedly achieve in two. The mortgage makes clear that MERS is named mortgagee by the lender. MERS holds mortgages, given in good faith for the purpose of securing a debt, for the security of creditors.[11] To hold such mortgages void would be to frustrate the intentions of both mortgagors and mortgagees. Accordingly, we conclude that a mortgage is not void, ab initio, by virtue of the naming of a nominee of the disclosed lender as mortgagee.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[11] For a critical discussion of the origin and role of MERS in real estate transactions, see C. Peterson, "Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System," 78 U. Cin. L. Rev. 1359 (2010).