******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# CHASE HOME FINANCE, LLC *v.*
# DANIEL J. SCROGGIN
## (AC 45996)

Bright, C. J., and Cradle and Suarez, Js.

*Syllabus*

The plaintiff, C Co., sought to foreclose a mortgage on certain real property owned by the defendant, S. Thereafter, A Co. was substituted for C Co., and the trial court granted A Co.'s motion for a judgment of strict foreclosure and rendered judgment thereon, from which S appealed to this court, which reversed in part the trial court's judgment and remanded the case to that court for further proceedings. Following the remand, A Co. filed a motion for summary judgment as to liability only, and, in support of its motion, submitted, inter alia, the affidavit of H, a litigation specialist employed by A Co.'s loan servicer. In her affidavit, H summarized the history of the assignment of the mortgage and further averred that C Co. had been the holder of the note at the time the present action was commenced and that A Co. was the current holder of the note and the mortgagee of record. After the deadline for filing a response to A Co.'s motion for summary judgment expired, S filed a document captioned "Practice Book § 17-47 Motion for Extension of Time to Respond to the Plaintiff's Motion for Summary Judgment, or Alternatively, Objection to Summary Judgment," which the court denied as untimely. S then noticed the deposition of a designee of A Co., seeking various documents, and A Co. filed a motion for a protective order on the grounds that S's requests were untimely and sought information to which he was not entitled, and the trial court summarily granted the motion for a protective order. When the parties appeared before the court, the court granted A Co.'s motion for summary judgment without a hearing, in the absence of opposition, after S's attorney acknowledged that he had not filed a response to the motion. Subsequently, A Co. filed a motion for a judgment of strict foreclosure, which the trial court granted and rendered judgment thereon, from which S appealed to this court, which reversed in part the trial court's judgment and remanded the case to that court for further proceedings. During the proceedings on remand, A Co. reclaimed for adjudication its summary judgment motion, and S issued notices of two depositions, seeking information nearly identical to the information he had previously sought, which was the subject of the protective order. A Co. then moved for a protective order barring S from deposing its corporate designee and keeper of records. S filed a memorandum of law in opposition to A Co.'s motion for summary judgment, arguing, inter alia, that, because A Co. refused to produce H for a deposition, the court should deny the motion pursuant to the rule of practice (§ 17-47) that permits the court to deny summary

judgment when appropriate documents are unavailable. S also filed an affidavit pursuant to Practice Book § 17-47 explaining why he should be granted a continuance to conduct discovery. After a hearing, the court granted A Co.'s motion for summary judgment as to liability and rendered a judgment of strict foreclosure, from which S appealed to this court. *Held*:

1. S could not prevail on his claim that the trial court erred in granting summary judgment as to liability because it improperly relied on H's affidavit in determining that C Co. was the holder of the note at the time the action had been commenced: H averred that she had personal knowledge of the records pertaining to the note and mortgage in this case based upon her review of those records, which were received and maintained in the regular and ordinary practice of A Co.'s loan servicer, such that they constituted competent evidence of C Co.'s status as holder of the note when the action had been commenced; moreover, this court rejected S's claim that the trial court should not have relied on H's affidavit because she failed to attach to it the documents on which her averments were based, noting that our Supreme Court rejected virtually the same argument in *RMS Residential Properties, LLC* v. *Miller* (303 Conn. 224), and reasoning that to be competent to testify, H needed only to have personal knowledge of the business records.

2. S could not prevail on his claim that the trial court erred in granting summary judgment as to liability because it failed to give him, as the nonmoving party, the benefit of all favorable inferences to be drawn from the evidence by neglecting to draw an adverse inference from A Co.'s refusal to produce witnesses and documents requested by S: S failed to set forth any facts, other than A Co.'s filing of a motion for a protective order, which is permitted by our rules of practice, in support of his contention that A Co. had engaged in extraordinary measures to prevent S from deposing H or any other corporate designees of A Co.; moreover, S's claim that he was entitled to an adverse inference for A Co.'s failure to allow him to depose H on the basis of the missing witness rule adopted in *Secondino* v. *New Haven Gas Co.* (147 Conn. 672) was legally flawed in that the missing witness rule was significantly limited in civil cases by statute (§ 52-216c) after *Secondino* had been issued, and S failed, in his brief to this court, to acknowledge the abrogation of *Secondino*; furthermore, setting aside the fact that S's reliance on *Secondino* was misplaced, S was unable to demonstrate that he would have been entitled to the benefit of the adverse inference permitted by § 52-216c.

3. S could not prevail on his claim that the trial court abused its discretion when it implicitly granted A Co.'s motion for a protective order, resulting in a complete denial of discovery and a denial of his ability to rebut A Co.'s claims: S's claim was belied by the fact that he neither filed a request pursuant to Practice Book § 17-47 with the court nor requested that the court rule on A Co.'s motion for a protective order; moreover,

the trial court granted A Co.'s motion for a protective order as to S's request to depose a designee of the plaintiff after the first remand from this court and prior to S's second appeal, and S could have challenged the propriety of the protective order in his second appeal, but chose not to do so; furthermore, further discovery was beyond the rescript order of this court in the second appeal, as this court addressed the discovery issue because it was likely to arise on remand and determined that the trial court did not abuse its discretion in ruling that S's request for an extension of time to conduct discovery to respond to A Co.'s motion for summary judgment was untimely.

Argued January 3—officially released April 9, 2024

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the defendant, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the defendant was defaulted for failure to plead; thereafter, Bank of America, N.A., was cited in as a defendant and the plaintiff filed an amended complaint; subsequently, AJX Mortgage Trust I was substituted as the party plaintiff; thereafter, the court, *Aurigemma, J.*, granted the substitute plaintiff's motion for judgment as to counts two through six of the amended complaint; subsequently, the court granted the substitute plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, from which the named defendant appealed to this court, *Keller, Prescott* and *Bear, Js.*, which reversed in part the trial court's judgment and remanded the case for further proceedings; thereafter, the substitute plaintiff withdrew counts five and six of the amended complaint; subsequently, the court, *Aurigemma, J.*, granted the substitute plaintiff's motion for summary judgment as to liability only and granted the substitute plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, from which the named defendant appealed to this court, *Keller, Moll* and *Bishop, Js.*, which reversed the trial court's judgment and remanded the case for further proceedings; thereafter, the court, *Hon. Edward*

*S. Domnarski*, judge trial referee, granted the substitute plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, from which the named defendant appealed to this court. *Affirmed*.

*Thomas P. Willcutts*, for the appellant (named defendant).

*Christopher J. Picard*, with whom, on the brief, was *Joseph R. Dunaj*, for the appellee (substitute plaintiff).

*Opinion*

CRADLE, J. The defendant, Daniel J. Scroggin, who is also known as Daniel F. Scroggin or Daniel Scroggin, appeals from the judgment of strict foreclosure rendered by the trial court, for the third time, in favor of the substitute plaintiff, AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee.[1]

---

[1] This is the third appeal taken from a judgment rendered in this case. We note that, "[i]n a prior appeal, this court explained that in September, 2010, after the named plaintiff, Chase Home Finance, LLC (Chase), had commenced this action against the defendant, Chase filed a motion to cite in Bank of America, N.A. (Bank of America), as a [third-party] defendant. The court granted this motion. Subsequently, [Chase] served Bank of America with an amended complaint that alleged that Bank of America was a lien holder. In March, 2011, Bank of America was defaulted for failure to appear. In January, 2012, Middconn Federal Credit Union sought to be made a party defendant to the action as a postjudgment lis pendens holder. The court granted the request. Later, Middconn Federal Credit Union was defaulted for failure to plead and failure to disclose a defense.

"In June, 2012, Chase moved to substitute JPMorgan Chase Bank, N.A., as [the] plaintiff in the action. The court granted the motion. In June, 2014, JPMorgan Chase Bank, N.A., moved to substitute Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC, its trustee, as [the] plaintiff in the action. The court granted the motion. In July, 2015, Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC, its trustee, moved to substitute AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee, as [the] plaintiff in the action. The court granted the motion. *Chase Home Finance, LLC* v. *Scroggin*, 178 Conn. App. 727, 729 n.1, 176 A.3d 1210 (2017). As in the prior appeal, we will refer to AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee, as the plaintiff. Additionally, because neither Bank of America nor Middconn Federal Credit Union is participating in this appeal, we will refer to Daniel J. Scroggin as the defendant." (Internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Scroggin*, 194 Conn. App. 843, 846 n.1, 222 A.3d 1025 (2019).

On appeal, the defendant claims that the court (1) erred in granting summary judgment as to liability in that it improperly relied on an affidavit of a loan officer employed by the plaintiff in determining that the original plaintiff, Chase Home Finance, LLC (Chase), was the holder of the note in this case at the time the action was commenced and failed to draw an adverse inference from the plaintiff's refusal to produce witnesses and documents requested by the defendant, and (2) abused its discretion when it implicitly granted the plaintiff's motion for a protective order, which, he alleges, "resulted in a complete denial of discovery and a denial of [his] ability to rebut the plaintiff's claims." We affirm the judgment of the trial court.

The following factual and procedural history is relevant to our resolution of the defendant's claims on appeal. In 2009, Chase commenced the present foreclosure action against the defendant. In its original complaint, Chase alleged that, in 2007, the defendant executed a promissory note in favor of Chase Bank USA, N.A., which was secured by a mortgage on certain real property in Portland owned by the defendant. Chase further alleged that the mortgage was subsequently assigned to it, that it was the holder of the note and mortgage, and that the defendant had defaulted on the note by failing to make the required payments. By way of relief, Chase sought, in relevant part, foreclosure of the mortgage.

In 2010, after the defendant was defaulted for failure to plead, Chase filed a request for leave to amend its complaint along with the proposed amended complaint, to which the defendant did not object. At no time did the defendant move to set aside the default for failure to plead.

In November, 2015, the defendant filed an answer to the original complaint and disclosed a defense challenging the plaintiff's "right and standing to foreclose upon the subject mortgage . . . ." Shortly thereafter, Chase

moved for a judgment of strict foreclosure. In April, 2016, the defendant filed an answer to Chase's amended complaint and an objection to the plaintiff's motion for strict foreclosure. Following a hearing, the trial court, *Aurigemma, J.*, granted the plaintiff's motion for judgment of strict foreclosure.

The defendant appealed from the judgment of strict foreclosure to this court. This court reversed the judgment, concluding that the trial court had abused its discretion in failing to consider the effect of the amended complaint upon the 2010 default and that the court should have considered the defendant's answer to the amended complaint as well as his disclosed defense. *Chase Home Finance, LLC* v. *Scroggin*, 178 Conn. App. 727, 745–46, 176 A.3d 1210 (2017) (*Chase I*).

In March, 2018, following remand, the plaintiff moved for summary judgment as to liability only on its strict foreclosure claim. In support of its motion, the plaintiff submitted, inter alia, the affidavit of Naomi Hernandez, a litigation specialist employed by the plaintiff's loan servicer. In her affidavit, Hernandez summarized the history of the assignment of the mortgage and further averred, in relevant part, that Chase was the holder of the note at the time the present action was commenced and that the plaintiff is the current holder of the note and is the mortgagee of record.

The deadline for filing a response to the plaintiff's motion for summary judgment expired on May 10, 2018. See Practice Book § 17-45 (b).[2] On May 24, 2018, the

---

[2] Practice Book § 17-45 provides: "(a) A motion for summary judgment shall be supported by appropriate documents, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and other supporting documents.

"(b) Unless otherwise ordered by the judicial authority, any adverse party shall file and serve a response to the motion for summary judgment within forty-five days of the filing of the motion, including opposing affidavits and other available documentary evidence.

"(c) Unless otherwise ordered by the judicial authority, the moving party shall not claim the motion for summary judgment to the short calendar less than forty-five days after the filing of the motion for summary judgment."

defendant filed a document captioned "Practice Book § 17-47 Motion for Extension of Time to Respond to the Plaintiff's Motion for Summary Judgment, or Alternatively, Objection to Summary Judgment."[3] The court, *Aurigemma, J.*, denied that motion as untimely. Also on May 24, 2018, the defendant noticed the deposition of a designee of the plaintiff, seeking numerous documents, including "[a]ll documents in the deponent's possession, custody or control that the [plaintiff's] affiant relied upon in executing the [plaintiff's] affidavit in support of summary judgment." The plaintiff filed a motion for a protective order on the grounds that the defendant's requests were untimely and sought information to which he was not entitled, to which the defendant objected. The trial court, *Aurigemma, J.*, summarily granted the motion for a protective order.

On May 29, 2018, the parties appeared before the court, *Aurigemma, J.*, at short calendar. The defendant's attorney acknowledged that he had not filed a response to the motion for summary judgment. The court then proceeded to rule on the motion without a hearing, concluding: " 'Well, there's no opposition, so the motion's granted, absent opposition.' " *Chase Home Finance, LLC* v. *Scroggin*, 194 Conn. App. 843, 850, 222 A.3d 1025 (2019) (*Chase II*). The court thereafter granted the plaintiff's subsequent motion for judgment of strict foreclosure.

The defendant appealed that judgment on the grounds, inter alia, that the court (1) erred in granting summary judgment without hearing oral argument as required by Practice Book § 11-18 and (2) abused its discretion in

---

[3] Practice Book § 17-47 provides: "Should it appear from the affidavits of a party opposing the motion [for summary judgment] that such party cannot, for reasons stated, present facts essential to justify opposition, the judicial authority may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

denying his motion for an extension of time to respond to the plaintiff's motion for summary judgment pursuant to Practice Book § 17-47. Id., 846. In *Chase II*, this court concluded that "the defendant had a right to oral argument, which was not waived, with respect to the plaintiff's motion for summary judgment, and, therefore, the trial court improperly adjudicated the motion without permitting oral argument." Id., 859. As to the defendant's second claim, which the court addressed because it was likely to arise on remand; see id., 847 n.2; the court held that, "[b]ecause the defendant did not timely comply with the requirements of § 17-47 [which imports the forty-five day filing deadline set forth in Practice Book § 17-45] . . . the trial court did not abuse its discretion by denying the defendant's motion for an extension of time to respond to the plaintiff's motion for summary judgment and to conduct discovery related thereto." Id., 862; see also id., 863. This court's rescript stated as follows: "The judgment is reversed and the case is remanded for further proceedings consistent with this opinion." Id., 863. Our decision in *Chase II* was officially released on December 17, 2019.

On April 5, 2021, during the proceedings on remand, the plaintiff reclaimed for adjudication its 2018 summary judgment motion. On that same day, the defendant issued notices of two depositions, seeking information nearly identical to the information he sought in 2018, which was the subject of the protective order.[4] On April

[4] The defendant requested that the plaintiff make a corporate designee available for deposition to testify regarding (1) the basis for the averments in Hernandez' affidavit, (2) the identity of the owners of the note and mortgage throughout the pendency of the present action, and (3) the basis for the current substitute plaintiff's claim of ownership of the note and mortgage. The defendant also noticed the deposition of the plaintiff's keeper of records and requested that the deponent produce at the deposition (1) the plaintiff's complete mortgage file, (2) all correspondence to or from the defendant, (3) all documents referenced in the plaintiff's memorandum of law in support of its motion for summary judgment, and (4) all documents that may be referenced in the deposition of the plaintiff's corporate designee.

12, 2021, the plaintiff moved for a protective order barring the defendant from deposing the plaintiff's corporate designee and keeper of records. The plaintiff argued that the defendant was seeking information that he was "simply not entitled [to] . . . concerning the trust and the transfers of the loan." The plaintiff also argued that the trial court was limited by this court's 2019 remand order in *Chase II* to hearing oral argument on the summary judgment motion and that, therefore, the defendant was precluded from conducting any further discovery. On April 21, 2021, the defendant filed an objection to the plaintiff's motion, arguing that the plaintiff's motion sought "a complete bar to all discovery" in its efforts to "conceal access to such basic evidentiary matters as being sought by the defendant here . . . ." In response to the plaintiff's argument that the defendant's pursuit of discovery went beyond this court's remand order in *Chase II*, the defendant argued in his memorandum of law in opposition to the motion for a protective order, inter alia, that the plaintiff's motion "mis-cites two Appellate Court cases for the proposition that they place limitations upon the discovery that the defendant is seeking, where the holdings in neither case even addresses the proper scope of discovery, let alone restrict the scope of discovery sought by the defendant here . . . ." (Citations omitted.)

On May 13, 2021, the defendant filed a memorandum of law in opposition to the plaintiff's motion for summary judgment, arguing, in relevant part, that the plaintiff had failed to meet its burden of establishing that it had standing to enforce the subject note and mortgage. The defendant also argued that the trial court should deny the motion pursuant to Practice Book § 17-47 due to the plaintiff's refusal to produce Hernandez for a deposition. Along with his memorandum of law in oppo-

sition to the motion for summary judgment, the defendant's counsel also filed an affidavit pursuant to § 17-47 in which he explained why the defendant should be granted a continuance to permit him to conduct discovery to further support his opposition to the plaintiff's motion for summary judgment.

A hearing was scheduled for August 29, 2022, on the plaintiff's motions for a protective order and summary judgment and the defendant's objections to those motions. At that hearing, the court, *Hon. Edward S. Domnarski*, judge trial referee, marked the motion for a protective order off. The court, however, heard oral argument on the motion for summary judgment and the defendant's objection thereto. On September 28, 2022, the court issued a memorandum of decision granting the plaintiff's motion for summary judgment as to liability only. On the basis of Hernandez' affidavit and copies of the note, mortgage, and assignments, the court concluded that the plaintiff had "provided evidence sufficient to establish that it is the current holder of the note and that [Chase] was the holder of the note at the commencement of this action. The defendant has failed to present any evidence to contravene ownership, thus, there is no genuine issue of material fact as to ownership of the note." The court thereafter rendered a judgment of strict foreclosure. This appeal followed. Additional facts and procedural background will be set forth as necessary.

I

The defendant first challenges the summary judgment as to liability rendered in favor of the plaintiff. "The standard of review of a trial court's decision granting [a motion for] summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The courts are in entire agreement that the moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Our review of the trial court's decision to grant the [defendants'] motion[s] for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Dusto* v. *Rogers Corp.*, 222 Conn. App. 71, 87, 304 A.3d 446 (2023), cert. denied, 348 Conn. 939, 307 A.3d 274 (2024). Likewise, our review of a court's determination that a party has standing to assert a claim, which implicates the court's subject matter jurisdiction, presents a question of law over which our review is plenary. *Bayview Loan Servicing, LLC* v. *Ishikawa*, 220 Conn. App. 625, 632, 298 A.3d 1276 (2023).

The defendant claims that the court erred in granting summary judgment as to liability in that it improperly relied on an affidavit of a loan officer employed by the plaintiff in determining that Chase was the holder of the note at the time this action was commenced. He further contends that the court failed to give him, as the nonmoving party, the benefit of all favorable inferences to be drawn from the evidence by neglecting to draw an adverse inference from the plaintiff's refusal

to produce witnesses and documents requested by the defendant. We address the defendant's claims in turn.

A

The defendant first contends that the court erred in relying on Hernandez' affidavit as proof that Chase was the holder of the note at the time this action was commenced. Specifically, the defendant argues that "[t]here was no foundation for [Hernandez' statement] that [Chase] was in possession of and/or [was] the holder of the note when the action was commenced" in that the statement was not based on Hernandez' personal knowledge, as required by Practice Book § 17-46. The defendant also argues that Hernandez' statements constitute inadmissible hearsay because the documents Hernandez purportedly relied on in support of her affidavit were not attached to her affidavit. We disagree.[5]

In the affidavit accompanying the plaintiff's motion for summary judgment, Hernandez averred, inter alia: "Gregory Funding LLC maintains records for the Loan in its capacity as Substitute Plaintiff's loan servicer. As part of my job responsibilities for Gregory Funding LLC, I am familiar with the type of records maintained by

---

[5] The defendant also argues that Hernandez' affidavit was insufficient to establish the plaintiff's standing because it "makes no statement as to when the note was endorsed, nor does the note itself contain a date for the endorsement." He contends that "there is nothing in the record here to indicate when the note was endorsed in blank or that said endorsement was made prior to the commencement of this action . . . ." In so arguing, the defendant ignores the well established principle that "[t]he plaintiff's possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note . . . . After the plaintiff has presented this prima facie evidence, the burden is on the defendant to impeach the validity of [the] evidence that [the plaintiff] possessed the note at the time that it commenced the . . . action or to rebut the presumption that [the plaintiff] owns the underlying debt." (Internal quotation marks omitted.) *Ditech Financial, LLC* v. *Joseph*, 192 Conn. App. 826, 832, 218 A.3d 690 (2019). Here, after the plaintiff submitted to the court a copy of the note endorsed in blank, the burden shifted to the defendant to impeach the plaintiff's evidence. He failed to do so.

Gregory Funding LLC in connection with the Loan. . . . The information in this affidavit is taken from Gregory Funding LLC's business records. I have personal knowledge of Gregory Funding LLC's procedures for creating these records. They are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Gregory Funding LLC's regularly conducted business activities; and (c) it is the regular practice of Gregory Funding LLC to make such records. To the extent records related to the Loan come from another entity, those records were received by Gregory Funding LLC in the ordinary course of its business, have been incorporated into and maintained as part of Gregory Funding LLC's business records, and have been relied on by the Gregory Funding LLC. It is the regular and ordinary practice of the Gregory Funding LLC to make and receive such records. I make this Affidavit based upon personal knowledge that I obtained through the review of and in reliance upon business records concerning the Loan. . . . I have personally reviewed Gregory Funding LLC's business records that relate to the Note and Mortgage and to the servicing of the loan evidenced by the Note, which Note and Mortgage are more particularly described below. . . . In the capacity and by reason of the foregoing, I have personal knowledge of the facts stated in this affidavit. . . . On or before December 4, 2009, [Chase], directly or through an agent, acquired and has continuously had possession of the original promissory note. The promissory note contains an allonge and is endorsed in blank. [Chase] was the holder of the Note at the time of commencement of the instant foreclosure action. Substitute Plaintiff is the current holder of the Note and mortgagee of record. Substitute Plaintiff has the right to foreclose the subject note and mortgage."

The defendant contends that the court erred in relying on Hernandez' affidavit because Hernandez lacked personal knowledge of the facts to which she averred and her reliance on a review of business records rendered the affidavit fatally infirm under Practice Book § 17-46[6] and constituted inadmissible hearsay. Our Supreme Court addressed this issue, albeit in the context of an affidavit of debt, in *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, 334 Conn. 374, 222 A.3d 950 (2020) (*Jenzack*). In *Jenzack*, the court explained that "[t]he initial rationale for the [business records] exception was that, although hearsay, business records [are] trustworthy because their creators had relied on the records for business purposes. . . . Because of the trustworthiness of business records, [General Statutes] § 52-180 should be liberally interpreted in favor of admissibility. . . . Section 52-180 (b) provides that a record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. As such, we have held that the witness introducing the document need not have made the entry himself or herself . . . [or] have been employed by the organization during the relevant time period. . . . In addition, [t]here is no requirement in § 52-180 . . . that the documents must be prepared by the organization itself to

---

[6] Practice Book § 17-46 provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto."

be admissible as that organization's business records. . . .

"When a party introduces a document that it did not create but that it received from a third party, the business records exception will apply only if the information contained in the document is based on the entrant's own observation or on information of others whose business duty it was to transmit it to the entrant. . . . Where the prior owner of the note had a legitimate business duty to provide to the next holder the information used to generate the payment history, the printout of that information was the business record of the present holder. . . . If part of the data was provided by another business, as is often the case with loan records in connection with the purchase and sale of debt, the proponent does not have to lay a foundation concerning the preparation of the data it acquired but must simply show that these data became part of its own business record as part of a transaction in which the provider had a business duty to transmit accurate information. . . .

"[R]egardless of whether supporting documentation or testimony from the third party is offered—it is the third party's duty to report [the information] in a business context which provides the reliability to justify [the business records exception to the hearsay rule]. . . . This reliability is further strengthened, in our view, when the entity receiving the information from a third party, with a business duty to report it, subsequently integrates that information into the entity's own business records and has a self-interest in [ensuring] the accuracy of the outside information . . . . By relying on information from a third party, an entity stakes not only its livelihood on the accuracy of the information received but also its reputation as being a trustworthy entity with which to do business in the future. . . .

"Furthermore, a business record is admissible if the information therein is reliable, which, in the case of

information provided by a third party, is established by the third party's business duty to report the information. [T]here is no requirement that the accuracy of a business record be proved as a prerequisite to its admission." (Citations omitted; internal quotation marks omitted.) Id., 390–92.

Here, as indicated previously, Hernandez averred that she had personal knowledge of the records pertaining to the note and mortgage in this case based on her review of those records, which were received and maintained in the regular and ordinary practice of the plaintiff's loan servicer.

We also are unpersuaded by the defendant's argument that the court should not have relied on Hernandez' affidavit because she failed to attach to it the documents on which her averments were based. Our Supreme Court rejected virtually the same argument in *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 235–36, 32 A.3d 307 (2011), overruled on other grounds by *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 325 n.18, 71 A.3d 492 (2013). In *RMS Residential Properties, LLC*, the plaintiff, which was seeking a judgment of foreclosure, moved for summary judgment, and, in support of its motion, "filed the affidavit of Thomas Gilmore, vice president with Specialized Loan Servicing, LLC, attorney in fact of [the plaintiff], alleging that, 'prior to the commencement of this action, [the plaintiff], through its attorney . . . became the holder of the note.' " Id., 227. The trial court rendered summary judgment in favor of the plaintiff and subsequently rendered a judgement of foreclosure by sale. Id., 228. The defendant appealed, contending that Gilmore "lacked personal knowledge of necessary facts, and therefore his reliance on a review of business records rendered the affidavit fatally infirm under Practice Book § 17-46." Id., 235. Our Supreme Court rejected that contention, concluding that the trial court properly found that the

affidavit was competent evidence in support of summary judgment. Id., 236. The court reasoned that, "[u]nder . . . § 52-180,[7] to be competent to testify, the affiant need only have personal knowledge of the relevant business records." (Footnote in original.) Id., 235–36. In the present case, because Hernandez' averments in her affidavit were based on her personal knowledge of the business records, they constituted competent evidence of Chase's status as holder of the note when the action was commenced. We therefore conclude that the court did not err in relying on it.

## B

The defendant also claims that the court erred in failing to give him, as the nonmoving party, the benefit of all favorable inferences to be drawn from the evidence by neglecting to draw an adverse inference from the plaintiff's refusal to produce witnesses and documents requested by the defendant.[8] Specifically, he

[7] "General Statutes § 52-180 provides in relevant part: '(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, or occurrence or event or within a reasonable time thereafter.

" '(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . .' " *RMS Residential Properties*, *LLC* v. *Miller*, supra, 303 Conn. 235–36 n.9.

[8] The defendant also argues that "a reasonable inference to be drawn on summary judgment is that the tortured history of this case flows from the failure of the original plaintiff to have proper documentation in place under Connecticut law before initiating this action." The defendant has cited no legal authority, nor are we aware of any, to support this argument. Furthermore, the defendant's suggested inference amounts to little more than speculation in which we will not engage.

argues that the plaintiff "has taken extraordinary measures to shield its own witness from answering questions" and asserts that he was entitled to an adverse inference for the plaintiff's failure to allow him to depose Hernandez on the basis of the "missing witness rule" adopted in *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), overruled in part by *State* v. *Malave*, 250 Conn. 722, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000).[9] The defendant's argument is both factually and legally flawed.

Factually, the defendant has failed to set forth any facts, other than the plaintiff's filing of a motion for a protective order, which is permitted by our rules of practice, in support of his contention that the plaintiff has engaged in extraordinary measures to prevent the defendant from deposing Hernandez or any other corporate designees of the plaintiff.

Legally, the missing witness rule was significantly limited in civil cases by the enactment of No. 98-50 of the 1998 Public Acts, which is codified at General Statutes § 52-216c, and provides: "No court in the trial of a civil action may instruct the jury that an inference unfavorable to any party's cause may be drawn from the failure of any party to call a witness at such trial. However, counsel for any party to the action shall be entitled to argue to the trier of fact during closing arguments . . . that the jury should draw an adverse inference from another party's failure to call a witness who has been proven to be available to testify."

The defendant failed, in his brief to this court, to acknowledge the abrogation of *Secondino*. When asked

---

[9] The "missing witness rule" provided that "[t]he failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause." (Internal quotation marks omitted.) *Secondino* v. *New Haven Gas Co.*, supra, 147 Conn. 675.

about it at oral argument before this court, the defendant's attorney contended that the logic of the missing witness rule applied in the context of summary judgment because this is not a case that would be tried to a jury. Setting aside the fact that the defendant's reliance on *Secondino* is misplaced, we also note that the defendant is unable to demonstrate that he would have been entitled to the benefit of the adverse inference permitted by § 52-216c. Accordingly, the defendant's claim is unavailing.

## II

The defendant also claims that the court abused its discretion when it implicitly granted the plaintiff's motion for a protective order, which, he alleges, "resulted in a complete denial of discovery and a denial of [his] ability to rebut the plaintiff's claims." We are not persuaded.

On August 29, 2022, the parties appeared before the court to argue the plaintiff's motions for summary judgment and a protective order and the defendant's objections to those motions. At that hearing, the court asked the plaintiff's attorney if it was necessary to rule on its motion for a protective order in light of the fact that it was hearing the motion for summary judgment at that time. The plaintiff's attorney responded that he believed it was relevant, but indicated that the defendant might request that the motion for summary judgment be marked off based on the defendant's request to conduct discovery. The defendant's attorney did not address the protective order but confirmed that he would like additional time to conduct discovery. The defendant's attorney acknowledged, however, that there was no request pursuant to Practice Book § 17-47 pending before the court at that time.[10] The court thus marked

[10] At the beginning of the hearing, the parties confirmed that the trial court was scheduled to hear those motions. The court asked the plaintiff's attorney if it was necessary to act on the motion for a protective order, in light of the court's intention to hear the motion for summary judgment that day. The plaintiff's attorney indicated that the defendant's attorney might ask

the motion for a protective order off and heard argument on the motion for summary judgment.

The defendant argues that "[t]he court's failure to rule upon the plaintiff's motion for [a] protective order and its failure to address the relief requested by the defendant under Practice Book § 17-47 resulted in a complete

---

for the motion for summary judgment to be marked off so the defendant could conduct discovery. The court responded that it understood that the defendant's attorney intended to proceed with the argument that day, stating, "I haven't heard anything. There's been nothing filed regarding further discovery. There's been nothing filed by way of extension or a continuance. I'm ready to hear his motion for summary judgment."

The defendant's attorney then stated that, with his objection to the motion for summary judgment, "[t]here is a Practice Book § 17-47 affidavit filed which indicates that we were seeking discovery in connection with the summary judgment and that on the basis of that affidavit the court can deny the summary judgment because of the plaintiff's efforts to not allow their affiant to be cross-examined or the court can continue it. So, those issues are before the court based on our [§] 17-47 filing. I do think that the . . . summary judgment fails without the discovery. But I . . . think that issue is on the table."

The court determined that the motion for summary judgment would be heard that day. The court further stated that the defendant's attorney failed to make a proper request for an extension of time to respond: "I didn't see anything—with all due respect, Attorney Willcutts, I didn't see any formal request for extension pursuant to the Practice Book section that says, hey, we need to extend a—a time to respond in order to do discovery. So, you've gone on and you filed an objection for motion for summary judgment. I know you've raised that.

"But, in terms of the rules of practice, I'm not—unless I'm mistaken, it's a long file, a lot of entries—I don't think there was ever a motion for summary judgment by the plaintiff, and then, the—then the defendant's Practice Book request for an extension of time to respond in order to conduct further discovery.

"If I'm wrong on that, please let me know. I know you're raising that issue now. But let's face it, we're parsing the Practice Book section pretty finely here, and I have to do it in the context of what the Appellate Court did at the status at that time.

"But I think what I'm understanding—unless you—you—and I have misunderstood something—you—the motion for summary judgment was filed at 156. You filed an objection at 176, and you're talking about wanting an extension but it doesn't appear that there's been a compliance with the Practice Book."

The defendant's attorney then acknowledged that he did not have a pending request for an extension of the argument scheduled to be held on the motion for summary judgment.

denial of discovery and a denial of [his] ability to rebut the plaintiff's claims . . . ." The defendant's claim is belied by the fact that, as reflected in the transcript quoted previously; see footnote 10 of this opinion; and confirmed by our review of the trial court file, he neither filed a request pursuant to § 17-47 with the court nor requested that the court rule on the plaintiff's motion for a protective order.

Moreover, as noted in the procedural history of this case as set forth herein, the trial court granted the plaintiff's motion for a protective order as to the defendant's request to depose a designee of the plaintiff after the remand following *Chase I* and prior to *Chase II*. The defendant could have challenged the propriety of the protective order on appeal in *Chase II* but chose not to do so. In challenging the propriety of a protective order now, the defendant is "obliquely attempting to revive an appeal that has succumbed by being abandoned." (Internal quotation marks omitted.) *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 221 Conn. App. 475, 488, 302 A.3d 339, cert. denied, 348 Conn. 923, 304 A.3d 445 (2023).

Additionally, as the plaintiff aptly points out, further discovery was beyond the rescript order in *Chase II*. As stated previously in this opinion, this court's rescript order in *Chase II* was for "further proceedings consistent with [its] opinion." *Chase Home Finance, LLC* v. *Scroggin*, supra, 194 Conn. App. 863. Although the reversal of the trial court's judgment in *Chase II* was based on the denial of the defendant's right to oral argument on the plaintiff's motion for summary judgment, this court addressed the discovery issue because it was likely to arise on remand, and determined that the court did not abuse its discretion in ruling that the defendant's request for extension of time to conduct discovery to respond to the plaintiff's motion for summary judgment was untimely. Id., 847 n.2, 862. It would

be illogical to suggest that this court's remand order encompassed discovery that the court determined was untimely. The fact that this court addressed the discovery issue that was not necessary for the disposition of the appeal in *Chase II*, but was likely to arise on remand, can only be read as a limitation of the proceedings on remand—namely, that the defendant was not entitled to a further extension of time to conduct discovery.[11] The defendant's claim therefore fails.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

---

[11] We also note that the defendant's claim that he was in need of discovery to respond to the plaintiff's motion for summary judgment is somewhat belied by the fact that he waited more than one year from the court's remand in *Chase II* before noticing the deposition of a designee of the plaintiff. Given the history of this case, such a delay would have been sufficient reason for the court, in the exercise of its discretion, to deny a request made pursuant to Practice Book § 17-47.