******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WILMINGTON SAVINGS FUND SOCIETY, FSB, TRUSTEE *v.* ISANDRA L. SCHULZ ET AL.
## (SC 21065)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property owned by the named defendant, S. S had executed a promissory note that was secured by the mortgage in favor of a predecessor bank. After S defaulted, another bank, B Co., became the holder of the note and the assignee of the mortgage. The original note, however, was lost while in the custody of B Co.'s loan servicer, C Co. Thereafter, B Co. assigned the mortgage to the plaintiff. After the plaintiff commenced the present foreclosure action, it filed a motion for summary judgment as to liability with attached exhibits, including sworn affidavits executed on behalf of C Co. by three of its employees, H, B, and G. The trial court granted the plaintiff's motion for summary judgment and rendered a judgment of strict foreclosure. S appealed to the Appellate Court, which affirmed the trial court's judgment. On the granting of certification, S appealed to this court, claiming, inter alia, that the plaintiff's secondary evidence in support of its motion for summary judgment was insufficient to prove that no genuine issue of material fact existed as to the plaintiff's ownership of the debt underlying the mortgage. *Held*:

The Appellate Court improperly upheld the trial court's decision to grant the plaintiff's motion for summary judgment and the judgment of strict foreclosure, as the plaintiff failed to demonstrate that there was no genuine issue of material fact with respect to its ownership of the debt underlying the mortgage, and, accordingly, the Appellate Court's judgment was reversed, and the case was remanded with direction to reverse the trial court's judgment of strict foreclosure and for further proceedings.

When a promissory note has been lost or misplaced, the plaintiff's ownership of the debt underlying the mortgage, which must be established prior to fore-closure, may be established through secondary evidence, such as an affidavit.

Pursuant to the rules of practice (§ 17-46) and Connecticut case law, an affidavit submitted in connection with a motion for summary judgment must be made on the basis of personal knowledge, a corporate affiant may obtain such personal knowledge through a review of business records, and, for the affidavit to constitute competent evidence, the affiant must provide a sufficient factual foundation to determine that those records fall within the statutory (§ 52-180) business records exception to the hearsay rule.

This court concluded that the plaintiff's secondary evidence, including the affidavits of H, B, and G, did not sufficiently establish the plaintiff's ownership of the debt.

B failed to make the minimum showing of personal knowledge in her affida-vit, as her affidavit did not include an attestation of personal knowledge or

include any averment to indicate that she had based her assertions therein on records qualifying as business records under § 52-180.

Although G's affidavit contained multiple averments demonstrating G's personal knowledge of matters relating to S's loan, G's affidavit did not constitute competent evidence of the plaintiff's ownership of the debt, as G's averments that the plaintiff was the owner of the debt and entitled to enforce the note were conclusory, and G failed to provide a sufficient factual basis for those conclusions, such as an explanation of how or when the plaintiff purported to obtain its rights in the debt.

Moreover, the deficiencies in G's affidavit were exacerbated by the lack of clarity with respect to the use of the term "the plaintiff" in one part of the affidavit, which appeared to suggest that the plaintiff was the holder of the note at the time of loss of possession, which was an incorrect assertion.

In addition, none of the other secondary evidence in the record, including H's affidavit or the copies of the note, the mortgage, and the assignment of the mortgage to the plaintiff, served to overcome the deficiencies in B's and G's affidavits.

Argued February 5—officially released June 2, 2026

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the court, *Shaban, J.*, granted the plaintiff's motion for summary judgment as to liability only; thereafter, the court, *Shaban, J.*, rendered a judgment of strict foreclosure, from which the named defendant appealed to the Appellate Court, *Alvord*, *Moll* and *Seeley*, *Js.*, which affirmed the trial court's judgment, and the named defendant, on the granting of certification, appealed to this court. *Reversed*; *further proceedings.*

*Isandra L. Schulz*, self-represented, the appellant (named defendant).

*Benjamin T. Staskiewicz*, for the appellee (plaintiff).

*Opinion*

MULLINS, C. J. The sole issue in this appeal is whether the Appellate Court correctly concluded that the plaintiff, Wilmington Savings Fund Society, FSB, as trustee for Upland Mortgage Loan Trust A, established its ownership of the debt for purposes of this action to foreclose

the mortgage. We conclude that, because the affidavits submitted in support of the plaintiff's motion for summary judgment as to liability were either inadmissible or lacking in sufficient detail and clarity, the plaintiff did not demonstrate that there was no genuine issue of material fact with respect to its ownership of the debt underlying the mortgage. Therefore, we reverse the judgment of the Appellate Court.

I

The record reveals the following relevant facts and procedural history. On or about August 14, 2007, the named defendant, Isandra L. Schulz,[1] executed a promissory note in the principal amount of $751,200, payable to Countrywide Bank, FSB (Countrywide). As security for that note, the defendant also executed a mortgage in favor of Countrywide on property located at 20 Hamilton Road in Ridgefield. The defendant has been in default on the note since March 1, 2010.

Bank of America, N.A. (Bank of America), as successor by virtue of merger with BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP, became the holder of the note and the owner of the underlying debt on or before March 6, 2012, and the mortgage was assigned to it by Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide, on June 2, 2016. During the time that Bank of America was the holder of the note and the owner of the debt, the original note was inadvertently "lost, mislaid, misfiled, or destroyed" while in the custody of Bank of America's loan servicer, Carrington Mortgage Services, LLC (Carrington). Thereafter, on September 23, 2020, Bank of America assigned the mortgage to the plaintiff. At the time that the plaintiff moved for summary judgment in this action, Carrington was the servicer and

---

[1]Obstetrics & Gynecology Associates, TD Bank USA, N.A., Customers Bank, and the widow(er), heir(s), and/or creditors of the estate of Wilbert C. Schulz also were named as defendants in the complaint. A motion for default for failure to appear was granted against those defendants, and they did not file an appellate brief or otherwise participate in this appeal. Accordingly, we refer to Isandra L. Schulz as the defendant.

attorney-in-fact for the plaintiff, having been appointed to those roles in 2016.

On October 26, 2020, the plaintiff filed the present action seeking to foreclose the mortgage. In its complaint, the plaintiff alleged that it was the holder of the note and the assignee of the mortgage. In her answer, filed on March 2, 2021, the defendant asserted that she had "insufficient knowledge or belief to either admit or deny the truth" of the essential allegations of the complaint. In addition, the defendant claimed that the plaintiff lacked standing and raised the special defense of fraud.

On June 18, 2021, the plaintiff filed a motion for summary judgment as to liability, along with a supporting memorandum of law. Attached to the plaintiff's motion and memorandum of law were copies of (1) the mortgage, (2) an assignment of the mortgage from Bank of America to the plaintiff, (3) a March 19, 2010 letter to the defendant from Bank of America titled "Notice of Intent To Accelerate," (4) a September 11, 2020 letter to the defendant titled "Emergency Mortgage Assistance ('EMAP') Notice to Mortgagor," and (5) the defendant's answer and special defenses. In addition, the plaintiff submitted three sworn affidavits executed on behalf of Carrington (Carrington affidavits).

The affiant in the first Carrington affidavit was Monica Hadley, Carrington's vice president (Hadley affidavit). The Hadley affidavit was executed on December 14, 2018, and prepared for use in a prior foreclosure action commenced by Bank of America against this same defendant.[2] Therein, Hadley averred that Bank of America "was the

---

[2] On March 16, 2012, Bank of America, as successor by virtue of merger with BAC Home Loans Servicing, LP, filed an action to foreclose the mortgage securing the defendant's note. See *Bank of America, N.A.* v. *Schulz*, Superior Court, judicial district of Danbury, Docket No. DBD-CV-12-6008999-S. In its complaint, Bank of America alleged that it was "the holder of said mortgage and note . . . ." On August 18, 2017, the trial court, *Russo, J.*, denied Bank of America's motion for summary judgment as to liability and explained, in its order, that Bank of America had "not established a prima facie case that [it was] entitled to summary judgment as a matter of law." Thereafter, on December 19, 2018, Bank of America withdrew the action pursuant to a confidential stipulation between the parties.

[h]older of the [n]ote and the [o]wner of the underlying debt on or before March 6, 2012." She further alleged that the note was lost while in Carrington's possession and that, "at that time," Bank of America remained "the [h]older and [the] [o]wner of the [n]ote . . . ." Attached to the Hadley affidavit was a copy of the note.

The other two Carrington affidavits were prepared for use in the present foreclosure action. Ami Bhavsar executed the second Carrington affidavit on September 9, 2020, in her capacity as Carrington's "[s]upervisor [of] [p]re-[f]oreclosure [c]ompliance" (Bhavsar affidavit). Elizabeth Gonzales, a "[d]efault [f]ulfillment [m]anager" for Carrington, executed the third Carrington affidavit on June 9, 2021 (Gonzales affidavit). In their respective affidavits, Bhavsar and Gonzales each made multiple averments regarding the plaintiff's authority to foreclose the mortgage.

On November 2, 2021, the defendant filed her objection and a memorandum of law in opposition to the plaintiff's motion for summary judgment. She argued, inter alia, that the Carrington affidavits lacked the proper foundation to qualify as business records pursuant to §8-4 of the Connecticut Code of Evidence and that the trial court, therefore, could not consider such evidence in ruling on the motion. In support of her opposition to the plaintiff's motion, the defendant submitted two affidavits, one in which the defendant's attorney was the affiant, and another executed by the defendant herself.

After hearing oral argument on the motion, the trial court granted the plaintiff's motion for summary judgment. In its memorandum of decision, the trial court determined that "the plaintiff [was] the holder of the note and/or [had] the right to enforce the note, [the plaintiff was] the mortgagee of record, and . . . the defendant [was] in default." The trial court explained that "[t]he defendant . . . provided no evidence to the contrary," including within the two affidavits she submitted in opposition, and also failed to plead a legally sufficient defense. Accordingly, the trial court concluded that "no genuine issue of material fact [existed] as to the liability of the defendant with respect to the debt due [to] the

plaintiff.” Thereafter, on June 6, 2023, the trial court rendered judgment of strict foreclosure and scheduled the law day for September 12, 2023.

The defendant appealed from the judgment of the trial court to the Appellate Court. She claimed that the trial court had erred in concluding that no genuine issues of material fact existed regarding the plaintiff’s authority to foreclose on the mortgage. Specifically, she argued that the Carrington affidavits contain significant inconsistencies and therefore failed to sufficiently demonstrate that the plaintiff was entitled to enforce the note. In a per curiam memorandum decision, the Appellate Court affirmed the judgment of the trial court. See *Wilmington Savings Fund Society, FSB* v. *Schulz*, 225 Conn. App. 902, 902, 314 A.3d 1073 (2024). This certified appeal followed.[3]

II

We begin by setting forth additional context surrounding this appeal, which is necessary to frame the principal issue. As the plaintiff acknowledged in its brief, prior to the plaintiff’s commencement of the present action, the note had been lost for “at least two years . . . .” Nevertheless, in its complaint, the plaintiff purported to be the holder of the note and sought both to enforce the note and to foreclose the mortgage.

In its brief and at oral argument before this court, the plaintiff, through its attorney, clarified that it (1) never was the holder of the note, and (2) seeks only the equitable remedy of foreclosure on the mortgage, not recovery on the note or a deficiency judgment.[4] Consequently,

[3]We granted the defendant’s petition for certification to appeal, limited to the following issue: “Did the Appellate Court properly uphold the trial court’s determination that the plaintiff-mortgagee had standing to enforce the note on the basis of the affidavits submitted in support of the plaintiff’s motion for summary judgment, therefore entitling the plaintiff to judgment of strict foreclosure as to liability?” *Wilmington Savings Fund Society, FSB* v. *Schulz*, 350 Conn. 917, 325 A.3d 215 (2024).

[4]“It is well established . . . that the [mortgagee] is entitled to pursue its remedy at law on the notes, or to pursue its remedy in equity upon

because the plaintiff has abandoned any action on the note, what we have before us is only an equitable action to foreclose the mortgage.

To establish a prima facie case in an equitable action to foreclose a mortgage, "the plaintiff must prove by a preponderance of the evidence that it is the owner of the [debt] and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure . . . have been satisfied." (Internal quotation marks omitted.) *JPMorgan Chase Bank, National Assn.* v. *Virgulak*, 341 Conn. 750, 771, 267 A.3d 753 (2022). It is undisputed that the plaintiff has established that there was no genuine issue of material fact that it was the assignee of the mortgage, that the defendant was in default, and that the plaintiff satisfied all applicable conditions precedent. But, to obtain summary judgment on its equitable action to foreclose the mortgage, the plaintiff also had to demonstrate that there was no genuine issue of material fact that it owned the debt underlying the mortgage.

When a note has been "lost, impaired or destroyed bona fide," as in the present case, the plaintiff's ownership of the debt "may be supplied by secondary evidence." (Internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 760, 680 A.2d 301 (1996). Therefore, we focus our analysis on whether the plaintiff sufficiently demonstrated, through its secondary evidence, that no genuine issue of material fact existed as to its ownership of the debt.[5]

the mortgage, or to pursue both. A note and a mortgage given to secure it are separate instruments, executed for different purposes and in this [s]tate action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure [action]." (Internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 759, 680 A.2d 301 (1996).

[5]In her brief to this court, the defendant claimed, inter alia, that the plaintiff lacked standing to bring this action because it did not prove that it ever had possession of the note, including at the time of its loss, and, therefore, could not establish its right to enforce the lost note pursuant to General Statutes §§ 42a-3-301 and 42a-3-309. We need not address this claim in this appeal because, as we explained in *New*

The secondary evidence before the trial court included the three Carrington affidavits, as well as copies of the note, the mortgage, and the assignment of the mortgage to the plaintiff. On appeal, the defendant argues, inter alia, that the plaintiff's secondary evidence was insufficient because the Carrington affidavits (1) do not constitute competent evidence due to the affiants' lack of personal knowledge, and (2) are not sufficiently clear to support a conclusion that no genuine issue of material fact existed on the present record, such that judgment should be rendered as a matter of law. The plaintiff responds that the totality of its secondary evidence provided a clear and consistent basis to conclude that there was no genuine issue of material fact that it owned the debt. We agree with the defendant and conclude that the plaintiff's secondary evidence did not establish, with the requisite clarity for summary judgment, that the plaintiff owned the debt.

The applicable standard of review and relevant legal principles that guide our analysis are well established. Pursuant to Practice Book § 17-49, summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." On appeal, "our review of summary judgment rulings is plenary." *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 333, 71 A.3d 492 (2013).

"The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact . . . ." (Internal quotation marks omitted.) *Rutherford* v. *Slagle*, 352 Conn. 27, 48, 334 A.3d 988 (2025). "A material fact . . . [is] a fact [that] will make a difference in the result of the case." (Internal quotation marks omitted.) *Day* v. *Seblatnigg*, 341 Conn. 815, 825,

*England Savings Bank* v. *Bedford Realty Corp.*, supra, 238 Conn. 745, "whatever restrictions §§ 42a-3-301 and 42a-3-309 might put [on] the enforcement of personal liability based solely [on] a lost note, they do not prohibit [a mortgagee] from pursuing an action of foreclosure to enforce the terms of the mortgage." Id., 760. Indeed, the loss of a note does not alter "the rights of the owner . . . but merely renders secondary evidence necessary and proper." (Internal quotation marks omitted.) Id.

268 A.3d 595 (2022). "As the burden of proof is on the [moving party], the evidence must be viewed in the light most favorable to the [nonmoving party]." (Internal quotation marks omitted.) *Fiano* v. *Old Saybrook Fire Co. No. 1, Inc.*, 332 Conn. 93, 101, 209 A.3d 629 (2019).

Practice Book § 17-46 provides in relevant part that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ." "Affidavits that fail to meet the criteria of . . . § 17-46 are defective and may not be considered to support the judgment." (Internal quotation marks omitted.) *United Cleaning & Restoration, LLC* v. *Bank of America, N.A.*, 225 Conn. App. 702, 710, 317 A.3d 2 (2024).

Personal knowledge "is variously described as knowledge acquired firsthand or from observation . . . as distinguished from a belief based on what someone else has said." (Citations omitted; internal quotation marks omitted.) *State* v. *Sunrise Herbal Remedies, Inc.*, 296 Conn. 556, 573, 2 A.3d 843 (2010). An affiant may obtain personal knowledge via a review of certain business records; see, e.g., *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 235–36, 32 A.3d 307 (2011), overruled in part on other grounds by *J.E. Robert Co*. v. *Signature Properties, LLC*, 309 Conn. 307, 71 A.3d 492 (2013); but, for the affidavit to constitute competent evidence, the affiant must provide a sufficient foundation to determine that those records fall within the business records exception to the hearsay rule under General Statutes § 52-180.[6]

---

[6]General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the

See, e.g., *United Cleaning & Restoration, LLC* v. *Bank of America, N.A.*, supra, 225 Conn. App. 709–13; see also, e.g., *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, 334 Conn. 374, 388 n.11, 222 A.3d 950 (2020) ("[f]or a business record to be admissible, [t]he court must determine . . . that the record was made in the regular course of business, that it was the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter" (internal quotation marks omitted)). Furthermore, an affidavit is inadequate to support a summary judgment motion to the extent that its averments are "conclusory," which means that the affiant "[e]xpress[es] a factual inference without stating the underlying facts on which the inference is based . . . ." (Citation omitted; internal quotation marks omitted.) *Stuart* v. *Freiberg*, 316 Conn. 809, 829, 116 A.3d 1195 (2015), quoting Black's Law Dictionary (8th Ed. 2004) p. 308.

### III

We begin our analysis with an examination of the Bhavsar affidavit, on which the plaintiff relies as evidence that it acquired the right to enforce the note from Bank of America on May 1, 2018. In light of the defendant's contention that the trial court improperly accepted and relied on the Carrington affidavits as secondary evidence, we consider whether the Bhavsar affidavit was competent evidence. We conclude that it was not.

In her affidavit, Bhavsar averred that she was an "authorized signer . . . on behalf of Carrington" in her role as Carrington's "[s]upervisor [of] [p]re-[f]oreclosure [c]ompliance . . . ." She proceeded to make two averments that addressed the plaintiff's purported ownership of the debt. First, Bhavsar stated that the "[p]laintiff is an entity that is not in possession of, but is entitled to

act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

enforce, [the] [n]ote . . . ." Second, Bhavsar averred that the "[p]laintiff had acquired the rights to enforce the [n]ote from [Bank of America], as [s]uccessor by [m]erger to BAC Home Loans Servicing, LP . . . on [May 1, 2018]."

As we previously explained, "in summary judgment proceedings, affidavits made by corporate officers and other parties [on behalf of the company or corporation] must aver or affirmatively show personal knowledge of the matters stated therein." *Evans Products Co.* v. *Clinton Building Supply, Inc.*, 174 Conn. 512, 515, 391 A.2d 157 (1978). "Determining whether an affiant has personal knowledge requires close examination of the averments set forth in the affidavit . . . ." *State* v. *Sunrise Herbal Remedies, Inc.*, supra, 296 Conn. 573.

Close examination of the averments in the Bhavsar affidavit reveals that Bhavsar failed to make the minimum showing of personal knowledge required by Practice Book § 17-46 and Connecticut case law. The Bhavsar affidavit does not include an attestation of personal knowledge; nor does it include any averment to indicate that she based the assertions at issue on records qualifying as business records under § 52-180. Contra *HSBC Bank USA, National Assn.* v. *Gilbert*, 200 Conn. App. 335, 341, 349–50, 238 A.3d 784 (2020) (affidavit was admissible when affiant was employed by plaintiff's mortgage loan servicer and "averred that she [was] authorized to make the affidavit, that she [was] familiar with the business records maintained by the plaintiff, which records were made and . . . maintained in the regular and usual course of business, that she had personal knowledge of the manner in which the records [were] created, and that she had reviewed and relied on the records in making her affidavit").

Bhavsar stated that her job title at Carrington was "[s]upervisor [of] [p]re-[f]oreclosure [c]ompliance" but did not describe any of her duties, such as those requiring her to review or maintain documents evidencing ownership of the debt. See, e.g., *Evans Products Co.* v. *Clinton Building Supply, Inc.*, supra, 174 Conn. 514–16 (affidavit was improperly admitted when corporate affiant identified his job title but did not make

any "affirmative showing of personal knowledge . . . such as a statement that the affiant [was] familiar with the [relevant] account, or even that he [was] familiar with or control[led] the [relevant] business records"). But cf. *Zbras* v. *St. Vincent's Medical Center*, 91 Conn. App. 289, 292–94, 880 A.2d 999 (affidavit was properly admitted when corporate affiant made averment of her title and duties, which directly related to averments made), cert. denied, 276 Conn. 910, 886 A.2d 424 (2005). Indeed, no reference was made in the Bhavsar affidavit to the records that support Bhavsar's conclusory assertion that the plaintiff is entitled to enforce the note; nor did the Bhavsar affidavit provide the necessary foundation to establish that Bhavsar's assertion is based on records admissible as business records pursuant to § 52-180.

We conclude that, under these circumstances, the trial court improperly admitted and relied on the Bhavsar affidavit, including the averment that the "[p]laintiff had acquired the rights to enforce the [n]ote . . . on [May 1, 2018]," as secondary evidence demonstrating that the plaintiff owned the debt.

IV

Having concluded that the trial court erred in relying on the Bhavsar affidavit, we next consider whether the Gonzales affidavit established the plaintiff's ownership of the debt. Given the conclusory nature of Gonzales' averments and their lack of clarity, we conclude that this evidence was insufficient.

At the beginning of the Gonzales affidavit, in paragraph 2, Gonzales identified the plaintiff in the present case as "the [p]laintiff" for purposes of her affidavit.[7] (Internal quotation marks omitted.) She stated: "I submit this affidavit in support of the substitute plaintiff, Wilmington Savings Fund Society, FSB, as [t]rustee of Upland Mortgage Loan Trust A (*the [p]laintiff*)'s [m]otion

[7] After paragraph 2 of the Gonzales affidavit, in which she signifies that the phrase "the [p]laintiff" will refer to the plaintiff in the present case, she uses the term "the [p]laintiff" without any further qualification or exception in paragraphs 4, 6, 7, 9, 10, 14, 15, 16, and 17 of her affidavit.

for [s]ummary [j]udgment." (Emphasis added; internal quotation marks omitted.)

Unlike the Bhavsar affidavit, the Gonzales affidavit contains multiple averments demonstrating Gonzales' personal knowledge of matters relating to the defendant's loan. Gonzales averred that she was employed by Carrington as a "[d]efault [f]ulfillment [m]anager" and that, in that capacity, she was "personally familiar with and [had] personal knowledge of the books and records of the [p]laintiff, as they apply to the account of the defendant . . . ." She further averred: "The books and records are kept in the ordinary course of business, and it is the ordinary course of business for [Carrington] to make and keep such records. Said books and records were made at or about the time described therein."

After making those preliminary statements, Gonzales made just two averments relating to ownership of the debt. In paragraph 7 of the Gonzales affidavit, Gonzales averred: "The [n]ote was . . . inadvertently lost, misplaced, or destroyed and has been unable to be located, despite a diligent effort to do so. As evidenced by the [l]ost [n]ote [a]ffidavit, *the [p]laintiff was the holder of the [n]ote at the time of the loss of possession and remains the holder of the [n]ote, [the] owner of the debt*, and [the] party entitled to enforce the debt. A true and accurate copy of the [l]ost [n]ote [a]ffidavit is attached hereto and incorporated herein as [e]xhibit A."[8] (Emphasis added.) Thereafter, in paragraph 10, Gonzales averred that "[*t*]*he [p]laintiff is the owner of the debt* and [the] party entitled to enforce the [n]ote and was the owner of the debt and [the] party entitled to enforce the [n]ote prior to the time this foreclosure was filed." (Emphasis added.)

Upon our review, we conclude that the Gonzales affidavit suffers from a crucial deficiency in paragraph 10,

[8]Exhibit A to the Gonzales affidavit, exhibit 2 to the plaintiff's motion for summary judgment, consists of two separate lost note affidavits: (1) the Bhavsar affidavit, and (2) the Hadley affidavit. Both are titled "AFFIDAVIT OF LOST NOTE." Notwithstanding the fact that Gonzales did not clarify which affidavit in that exhibit she had intended to reference, based on the factual details in paragraph 7 of the Gonzales

which is not corrected by paragraph 7. The deficiency in paragraph 10 is that Gonzales' averments that the plaintiff was "the owner of the debt" and "entitled to enforce the [n]ote" are conclusory. Specifically, the Gonzales affidavit is devoid of any factual foundation to support those bare assertions.

In *RMS Residential Properties, LLC* v. *Miller*, supra, 303 Conn. 224, we concluded that an affidavit sufficiently established the plaintiff's ownership of the debt when the affiant not only averred that the plaintiff was the holder of the note, but also set forth the transactions by which the plaintiff obtained that legal status. See id., 234–36. Specifically, the affiant relied on business records to aver that the original mortgagee endorsed the note in blank, another entity purchased the note from the original mortgagee, and that other entity conveyed the note to the plaintiff via an in-house transfer.[9] See id., 235. In the present case, in contrast, Gonzales provided no explanation as to how or when the plaintiff purportedly obtained its rights in the debt, such as through a specific transaction or conveyance of the debt. But cf. *Berkshire Bank* v. *Hartford Club*, 158 Conn. App. 705, 714, 120 A.3d 544 (affidavit sufficiently established that plaintiff owned note when its possession of original note and mortgage was undisputed and affiant averred "that he had reviewed the records of [the original mortgagee] and the plaintiff and that [the original mortgagee] had merged [with the plaintiff]"), cert. denied, 319 Conn. 925, 125 A.3d 200 (2015).

Because Gonzales made her averments in reliance on her review of the plaintiff's business records—not based on her personal knowledge of any transaction involving the debt—she needed to provide, in addition to the review generally described as one of the plaintiff's books and

---

affidavit, it is fair to presume that she was referencing the Hadley affidavit, which sets out Bank of America's ownership of the debt.

[9]Although we did not expressly set forth the nature of the affiant's averments in *RMS Residential Properties, LLC*, a review of the record and briefs in that case reveals that, in his affidavit, the affiant made these specific averments regarding the transactional history of the note. See *RMS Residential Properties, LLC* v. *Miller*, Conn. Supreme Court Records & Briefs, September Term, 2011, Record pp. 19–20.

records "as they apply to the account of the defendant," a sufficient factual basis for her conclusion that the plaintiff owned the debt. In the absence of any averments setting forth those specific facts, Gonzales' averments failed to establish the absence of any genuine dispute of material fact regarding the plaintiff's ownership of the debt. Cf. *Stuart* v. *Freiberg*, supra, 316 Conn. 828–29 (in case involving claims of fraud and negligent misrepresentation, averments that "the plaintiffs relied on the allegedly false contents of the defendant's financial statements" were "conclusory" and, therefore, inadequate for summary judgment, as they did not explain how or why plaintiffs so relied without having seen those financial statements).

This deficiency in the Gonzales affidavit is made worse by the lack of clarity in Gonzales' averments in paragraph 7. In that paragraph, if the term "the [p]laintiff" refers to the plaintiff in the present case, in accordance with Gonzales' identification in paragraph 2, then the averments in the Gonzales affidavit are incorrect. The plaintiff acknowledges that it was not the holder of the note at the time of the loss of possession and that it never was the holder of the note. Thus, it could not have "*remain[ed]* the holder" of a note it never held in the first place, and Gonzales could not have been referring to the plaintiff in the present case as "the [p]laintiff" in paragraph 7 of her affidavit when she averred that "the [p]laintiff . . . remains the holder of the [n]ote, [the] owner of the debt, and [the] party entitled to enforce the debt." (Emphasis added.) For that reason, the following question arises: which entity was Gonzales averring to be the owner of the debt in paragraph 7?

On appeal, the plaintiff contends that Gonzales used the term "the [p]laintiff" in paragraph 7 of her affidavit to refer to Bank of America. The plaintiff asserts that, although Gonzales "could have been more clear by referencing the specific party name," it is evident from a review of the Hadley affidavit—which Gonzales referenced as "the [l]ost [n]ote [a]ffidavit" in "[e]xhibit A"—that paragraph 7 relates to Bank of America, not the plaintiff in the present case. Accordingly, the plaintiff

contends, paragraph 7 does not create a confusing or ambiguous record regarding its ownership of the debt because it set forth Bank of America's prior ownership of the debt, and, thereafter, in paragraph 10, Gonzales averred that the plaintiff now owns the debt. We disagree. Even if we were to accept the plaintiff's argument that paragraph 7 of the Gonzales affidavit was intended to aver only that Bank of America was the holder of the note and the owner of the underlying debt when the note was lost, nothing in that paragraph describes how or when the debt was subsequently conveyed to the plaintiff, and, as we previously noted, paragraph 10 of the Gonzales affidavit does not fill that gap.

"It is especially appropriate to hold an affidavit submitted by a moving party to a stringent standard. Because the burden is on the movant, the evidence must be viewed in the light most favorable to the nonmovant and he is given the benefit of all favorable inferences that can be drawn." *Evans Products Co.* v. *Clinton Building Supply, Inc.*, supra, 174 Conn. 516. Viewing the Gonzales affidavit through the lens of this stringent standard, we conclude that it is not competent evidence of the plaintiff's ownership of the debt when this action was commenced.

Finally, none of the other secondary evidence in the record—including the Hadley affidavit and the copies of the note, the mortgage, and the assignment of the mortgage to the plaintiff—overcomes the deficiencies in the Bhavsar and Gonzales affidavits.[10] The Hadley affidavit established that Bank of America was the owner of the debt as of March 6, 2012, but provided no proof that the plaintiff subsequently gained ownership rights.[11]

[10]Although not directly relevant to our analysis, we note a further inconsistency in the secondary evidence on which the plaintiff relies. Hadley averred in her December 14, 2018 affidavit that Bank of America, as of that date, had "not assigned, pledged or hypothecated the . . . [n]ote." In contradiction of that averment, Bhavsar averred that the "[p]laintiff had acquired the rights to enforce the [n]ote from [Bank of America] . . . on [May 1, 2018]."

[11]In her affidavit, Hadley made no reference to the plaintiff and did not address any subsequent transfer of the debt from Bank of America to another entity, such as the plaintiff.

Although the chain of title documenting the assignment of the mortgage to the plaintiff may have been relevant insofar as it indicated an intent to transfer the debt; see, e.g., *Ulster Savings Bank* v. *28 Brynwood Lane, Ltd.*, 134 Conn. App. 699, 709–10, 41 A.3d 1077 (2012); an assignee of the mortgage does not have the authority to foreclose the mortgage "without ever having been assigned the debt . . . ." *Castle* v. *DiMugno*, 199 Conn. App. 734, 755, 237 A.3d 731 (2020). The plaintiff therefore submitted no competent secondary evidence indicating that the debt had been assigned to it.

To be clear, we do not hold today that any misstatement or omission in an affidavit submitted in support of a motion for summary judgment is fatal to the motion. Such is the case only when the result is a *genuine* issue of *material* fact. In this case, involving a purported transfer of a debt after the note evidencing that debt was lost, the combination of Bhavsar's failure to set forth, in accordance with the requirements of Practice Book § 17-46, the factual basis of her understanding of the transfer of the debt to the plaintiff and the conclusory nature of the Gonzales affidavit results in a genuine issue of material fact as to the plaintiff's ownership rights. Had either of these deficiencies been corrected or had the original note itself been transferred to the plaintiff, the result today would likely be different. But that is not the record before us.

Viewing the record in the light most favorable to the defendant as the nonmoving party, as we must, we conclude that the plaintiff's secondary evidence did not sufficiently establish its ownership of the debt. Accordingly, we further conclude that the Appellate Court improperly upheld the trial court's decision to grant the plaintiff's motion for summary judgment and the judgment of strict foreclosure.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's judgment of strict foreclosure and for further proceedings according to law.

In this opinion the other justices concurred.